UNITED STATES v. EAST TENNESSEE, VIRGINIA & GEORGIA R. Co.

*(Circuit Court, E. D. Tennessee. 1882.)*

RAILROADS—REV. ST. § 4386.—UNLOADING SHEEP, ETC.

Section 4386 of the Revised Statutes of the United States, imposing a penalty upon railroads carrying sheep, swine, etc., if they allow such sheep, swine, etc., to be more than 28 consecutive hours confined without unloading them for at least five hours for rest, water, and feeding, does not apply to a railroad carrying sheep, swine, etc., *from a point within a state to another point therein,* but only to such as convey swine, sheep, etc., from one state to another.

KEY, D. J. This is an action for a penalty under sections 4386 *et seq.* The declaration alleges that defendant is a railroad company operating a line of railroad over which cattle, sheep, swine, and other animals are conveyed from Georgia and Tennessee to Virginia and other states; and that defendant received and loaded upon its cars at Limestone, Tennessee, a lot of swine consigned to Chattanooga, in said state; and that they did not have proper food, water, space, and opportunity to rest, and were confined for more than 28 consecutive hours without being unloaded for rest, food, and water, and that in consequence the penalty of $500 imposed by the statute has been incurred. Defendant demurs to this declaration upon the grounds—*First,* that the declaration shows that the swine were shipped within the state to a point within the state, and therefore the transaction falls not within the terms of the statute; *second,* if the terms of the statute embrace such a case, the statute is unconstitutional, because it interferes with the internal commerce of a state, in so far as it applies to such a transaction as the one alleged in the declaration. So far as I know or am informed the questions raised under this statute have not been before our courts for adjudication.

I have been referred by the district attorney to *Hall* v. *De Cuir,* 95 U. S. 487, as bearing by analogy upon this case. In that litigation the state of Louisiana had passed a law for the regulation of the business of carriers of passengers within the state. This law had been disregarded by the defendant in that action, who was running a steam-boat from New Orleans, Louisiana, to Vicksburg, Mississippi. The plaintiff had got upon the boat at New Orleans to be carried to a landing on the Mississippi river, called Hermitage, in Louisiana. The points of embarkation and destination, as well as the river between them, were in Louisiana. A judgment was rendered in favor of the plaintiff in the inferior court of the state, and affirmed upon appeal

to the supreme court of the state, from whence it was taken to the supreme court of the United States and there reversed. The court say:

"The river Mississippi passes through or along the borders of 10 different states, and its tributaries reach many more. The commerce upon these waters is immense, and its regulation clearly a matter of national concern. If each state was at liberty to regulate the conduct of carriers while within its jurisdiction, the confusion likely to follow could not but be productive of great inconvenience and unnecessary hardship. Each state would provide for its own passengers, and regulate the transportation of its own freight, regardless of the interests of others. Nay, more, it would prescribe rules by which the carrier must be governed within the state in respect to passengers and property brought from without. On one side of the river, or its tributaries, he might be required to observe one set of rules and on the other side another. Commerce cannot flourish in the midst of such embarrassments. No carrier of passengers can conduct his business with satisfaction to himself or comfort to those employing him, if on one side of a state line his passengers, both white and colored, must be permitted to occupy the same cabin, and on the other be kept separate. Uniformity in the regulations by which he is to be governed from one end to the other of his route, is a necessity in his business, and, to secure it, congress, which is untrammeled by state lines, has been invested with the exclusive legislative power of determining what such regulations shall be." 95 U. S. 489.

In the case at bar the state of Tennessee has enacted no law in respect to the subject-matter of this contention. She has not entered the field of this legislation. It is occupied by congress alone, and the case must stand or fall upon the proper construction of the terms of the act of congress. If the act, by its terms, does not embrace a shipment of swine from one point within the state to another within it, over a line entirely within the state, the action must fail, and the other point raised by the demurrer will need no consideration.

Section 4386 of the Revised Statutes says:

"No railroad company within the United States, whose road forms any part of a line of road over which cattle, sheep, swine, or other animals are conveyed from one state to another, * * * shall confine the same in cars * * * for a longer period than 28 consecutive hours without unloading the same for rest, water, and feeding for a period of at least five consecutive hours."

The first part of the paragraph describes the railroad to be affected by the statute as one forming a "part of a line of road over which cattle, sheep, swine, or other animals are conveyed from one state to another." This does not include and cannot include any other animals than such as are conveyed from one state to another. It is

so limited by its plain, unambiguous language. When the statute prescribes the rule or regulation by which the railroad is to be governed, it says, "the same" shall not be confined, etc. The word "same" is here an adjective, and is defined to mean "not different or other; identical." If we supply the ellipsis in the sentence, the law will read: "No railroad company within the United States, whose road forms any part of a line of road over which cattle, sheep, swine, or other animals are conveyed from one state to another, shall confine the cattle, sheep, swine, or other animals to be conveyed from one state to another for a longer period," etc. A simple grammatical construction of the language used, confines the duties imposed to animals conveyed over the line of road from one state to another, and has no reference or relation to such as are shipped within the state to a point therein over a road within its limits. This view of the case renders it unnecessary to consider the other point raised by the demurrer. Whether congress has the power to impose duties similar to those embraced in this statute in respect to shipments of animals within a state over railroads of the state to points within it, does not arise. Congress in this statute, according to the view taken, has not attempted to do so.

The demurrer will be sustained and the bill dismissed.