UNITED STATES *v.* LOUISVILLE & N. R. Co.

*(District Court, M. D. Tennessee.* November 20, 1883.)

1. PRACTICE—EXCEPTIONS TO DEPOSITIONS.
   Where depositions are taken to be used as evidence in the federal courts in Tennessee, upon interrogatories filed with the clerk, where the witness resides over 100 miles from the place of trial, the notice served upon the opposite party need not state the time and place of taking the deposition; nor need it state the cause for taking the deposition. The clerk may issue the commission to take the deposition without an order of court.

2. CARRIERS OF LIVE-STOCK—CONSTRUCTION OF REV. ST. §§ 4386–4390.
   By the provision of the Revised Statutes, §§ 4386–4390, any railroad company, whose road forms any part of a line of road over which animals are conveyed from one state to another, is prohibited from confining the same in cars over 28 consecutive hours without unloading them for rest, water, and food for at least five consecutive hours. Section 4388 fixes the penalty for the violation of this statute at not less than $100 nor more than $500.

3. SAME—TIME—HOW COMPUTED.
   In estimating such confinement, the time during which the animals have been so confined prior to their delivery to the defendant must be included. Section 4386.

4. SAME—LIABILITY OF CARRIER.
   But, with this exception made by the statute, the carrier is liable only for the default occurring upon his own road; and, if other connecting lines confine the animals beyond the time prohibited, after they pass out of the control of the first carrier, there is no violation of the statute by it. This would be so, although the first carrier contracted for itself and its connecting lines to carry them to their destination.

The defendant issued its bill of lading whereby it and its connecting lines undertook to carry two cars of mules from Nashville to Vicksburg; the shipper contracting to accompany the stock, and to feed and water them *en route.* It appeared from the proof that the Louisville & Nashville Railroad Company leased and operated the Nashville & Decatur Railroad, which extends from Nashville, Tennessee, to Decatur, Alabama; and although the first-named company owned

a majority of the stock of the South & North Alabama Railroad Company, whose line extends from Decatur to Montgomery, Alabama, the latter company, as a distinct corporation, operated and controlled its own road by its own officers and employes.  At Decatur, the terminus of its own line, the defendant delivered the stock to its connecting line, the South & North Alabama Railroad Company, within the 28 hours after being loaded.  In the course of the transportation they were delivered to several different carriers, and there was proof tending to show that while in their custody the stock were confined over 28 hours without food or water.

The plaintiff took the deposition of the shipper, who resided more than 100 miles from the place of trial, by filing interrogatories with the clerk, and giving notice thereof to the defendant, who failed to cross-examine.  The defendant excepted to the reading of the deposition, because (1) the notice failed to state the time and place of taking the deposition; (2) the notice did not state the cause for taking the deposition; (3) the clerk could not issue the commission to take the deposition without an order of the court.  The court held that the plaintiff may pursue the state practice in taking depositions, and, having conformed to it in these particulars, the exceptions were disallowed.

*A. McClain,* U. S. Dist. Atty., and *J. R. Dillon,* Asst. U. S. Dist. Atty., for plaintiff.

*Ed. Baxter, Dickinson & Frazer,* and *Smith & Allison,* for defendant.

KEY, J., *(charging jury.)*  This action is brought by the government, under sections 4386 *et seq.* of the Revised Statutes, to recover a penalty of not less than $100, nor more than $500, for the failure of the defendant, as a carrier of live-stock, to comply with the requirements of said sections in the transportation of two cars of mules, shipped by J. M. Smither, January 25, 1882, from Nashville to Vicksburg.  The contract entered into between the shipper and the defendant has been read to you; and by its terms it appears that the defendant agreed for itself, and its connecting lines, to carry the animals from the point of shipment to their destination.  Whether they have carried out that agreement—whether the shipper carried out his agreement to go along with the stock and feed and water them—does not concern us in this action.  If the stock were damaged by a breach of the contract on the part of the defendant, it is a matter to be tried in an independent action by the shipper.  He is no party to this suit. We are confined solely to the inquiry, has there been a violation of the act of congress prohibiting railroads from confining animals in cars for a longer period than 28 consecutive hours without unloading them for at least five consecutive hours, and resting, feeding, and watering them within that time?  Section 4386 reads as follows:

"No railroad company within the United States, whose roads forms any part of a line of road over which cattle, sheep, swine, or other animals are

conveyed from one state to another, * * * shall confine the same in cars * * * for a longer period than 28 consecutive hours without unloading the same for rest, water, and feeding for a period of at least five consecutive hours, unless prevented from so unloading by storm or other accidental causes. In estimating such confinement the time during which the animals have been confined without such rest on connecting roads from which they are received shall be included, it being the intent of this section to prohibit their continuous confinement beyond the period of 28 hours, except upon contingencies hereinbefore stated."

Section 4387 makes it the duty of the railroad company, if the owner fail to do so, to feed and water the animals when so unloaded. Section 4388 provides that "any company * * * who knowingly and willingly fails to comply with the provisions of the two preceding sections, shall, for every such failure, be liable for and forfeit and pay a penalty of not less than $100 nor more than $500."

The declaration charges the defendant with knowingly and willingly violating these statutes. It will be noticed that the horse or mule is not mentioned *eo nomine* in the act. Cattle and other quadrupeds used for food appear to be the primary objects of protection by congress from long confinement without food or water. We know, too, as a part of the history of the times which induced this legislation, that immense numbers of cattle were shipped over the long lines of railroads in the west to the eastern cities, deprived of food and water for days, and stopped at the stock-yards before being carried into the great cattle markets, like New York, and there gorged with food and water. Consequently these statutes were passed, not more from considerations of sympathy for the cattle than to protect the public from imposition and from unwholesome food. The term "other animals" is also employed in the statute, which would include, of course, mules and horses.

You will also notice that it is only intended by this law to affect those companies whose roads form a part of a line of roads over which animals are conveyed, extending "from one state to another." If the line lies wholly within the territorial limits of any state, then this would be a matter not given to congress by the constitution, this act of the national legislature would not apply, and we would have to look to state legislation for relief.

You will have to look to the proof and ascertain how long these animals were confined in the cars by the defendant after they were loaded; whether for a longer time than the period fixed by the statute which I have just read. It is conceded that defendant was the first carrier to receive the stock after they were loaded on the cars. The chief difficulty is one of law. Is the defendant exonerated by proving that the statute was complied with while the stock was on its own road, or is it subject to this penalty if its connecting lines violated this law? The contention of the government is that the first carrier is liable for the penalty under this act, provided others in the chain of carriers violated the law after the stock had passed out of the

control of the carrier with whom the contract of shipment was made. The defense pleads that this, being a penal statute, must be strictly construed; and, furthermore, the intention of the legislature, as expressed in section 4388, was to punish that company alone which "knowingly and willfully fails to comply with the provisions of the statute." As to how that is, the act itself must govern; and it must furnish, if unambiguous, its own interpretation. To my mind it is clear enough, without resorting to any artificial rules of construction. The law declares that no railroad company transporting animals, etc., shall confine them in cars longer than 28 hours; that is, the company having possession of them when the 28 hours expires. That company alone has it in its power to comply with the statute, and therefore that company alone should be punished for a failure to comply with the law. If anything else was required, this construction is made clear by the last clause of section 4386: "In estimating such confinement the time during which the animals *have been* confined without such rest on connecting roads, from which they are received, shall be included." There is no provision made for adding the time that they may be confined on connecting roads thereafter.

So the defendant will not be liable for this penalty, if you find that as many as 28 hours had not elapsed, after the mules were loaded, before they were delivered to its first connecting carrier. When and where this delivery was made you must decide from the proof. This would be so, no matter what the particular contract may have been in this case between the shipper and carrier. It could not add to or take from the act of congress. That act requires the shipper to feed and water them in the first instance; but if he fails, the carrier must do it for him, and the act gives him a lien upon the stock for his reimbursement. The first carrier, contracting for itself and its connecting lines, may be required to deliver the stock at its ultimate destination; and if it fail to comply with the contract, the shipper may hold him liable for any damages that may have accrued either upon its own road, or upon any of the several connecting roads, resulting from a failure to feed and water the stock. But that carrier alone would be liable for this penalty who had actual manual possession of them at the time the period expired which has been fixed by congress.

Verdict and judgment followed for the defendant.

See *U. S.* v. *East Tennessee, etc., R. Co.* 13 FED. REP. 642.