UNITED STATES v. BALTIMORE & O. S. W. R. CO. (two cases).

(Circuit Court of Appeals, Sixth Circuit, February 19, 1908.   On Rehearing,
March 26, 1908.)

Nos. 1,770, 1,771.

1. STATUTES—CONSTRUCTION.
    In construing a clause of a statute regard must be first had to the
    language of the clause itself, and then to other clauses in the same
    act, and that construction should be adopted which permits the whole
    act to stand consistently together, or reduces the inconsistency to the
    smallest possible limits.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, § 285.]

2. CARRIERS—TRANSPORTATION OF LIVE STOCK—FOOD AND REST—FEDERAL
   STATUTE—CONSTRUCTION—PENALTY.
    Act Cong. June 29, 1906, c. 3594, 34 Stat. 607 [U. S. Comp. St. Supp.
    1907, p. 918], provides that no common carrier over whose road cattle,
    swine, sheep, and other animals shall be conveyed from one state to
    another, etc., shall confine them in cars, boats, or vessels for a longer
    period than 28 consecutive hours, without unloading for rest, water, and
    feeding, for a period of at least 5 consecutive hours, unless prevented
    by storm or other accidental or unavoidable causes, which cannot be
    anticipated or avoided by the exercise of due diligence, provided that,
    "on the written request of the owner or person in custody of that par-
    ticular shipment," the time of confinement may be extended to 36 hours,
    a penalty being prescribed for each violation of the act.   Held that,
    where several shipments of live stock, belonging to different owners, are
    contained in the same train, and the carrier fails to unload, as provided
    in such act, a penalty is recoverable for each shipment, the shipment,
    and not the train load, being the integer contemplated as the objective
    thing to which the offense relates.

On Rehearing.

3. CRIMINAL LAW—WRIT OF ERROR—RIGHT OF GOVERNMENT TO REVIEW.
    A writ of error will not lie at the instance of the government in a
    criminal case.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Criminal Law, §§
    2599–2614.]

4. PENALTIES—ACTIONS—RIGHT TO REVIEW—NATURE OF PROCEEDING.
    Act Cong. June 29, 1906, c. 3594, 34 Stat. 607 [U. S. Comp. St. Supp.
    1907, p. 918], prohibits interstate carriers from confining live stock in
    cars longer than 28 consecutive hours, without unloading for rest, water,
    and feeding.   Section 3 (34 Stat. 608 [U. S. Comp. St. Supp. 1907, p.
    919]) imposes certain penalties for a violation of the act, which section
    4 declares shall be recovered by civil action in the name of the United
    States in the Circuit or District Court.   Held that, though the statute
    is penal, an action to recover the penalties is civil, and hence the govern-
    ment is entitled to have a judgment in such proceeding reviewed by
    writ of error.

In Error to the District Court of the United States for the South-
ern District of Ohio.

S. T. McPherson, for the United States.
Edward Colston, for defendant in error.

Before SEVERENS and RICHARDS, Circuit Judges, and KNAP-
PEN, District Judge.

SEVERENS, Circuit Judge.   The two causes above entitled were
heard together in this court, being alike in all essential particulars.

They were 2 of 12 similar causes in which suits were brought by the United States to recover penalties for several violations by the defendant railroad company of an act of Congress entitled "An act to prevent cruelty to animals while in transit by railroad or other means of transportation" from one state to another, etc., passed June 29, 1906, c. 3594, 34 Stat. 607 [U. S. Comp. St. Supp. 1907, p. 918]. The suits were all brought in the District Court of the United States for the Southern District of Ohio, and each related to distinct shipments of cattle and swine made by different parties from stations of the railroad company in other states to various consignees at Cincinnati, Ohio. The petition in each case alleged a shipment over the defendant's road, from a station in another state than Ohio, by a party named, of the live stock therein described, to a certain consignee at Cincinnati; and then alleged that the time occupied in the transportation was more than 40 hours—in the first of the cases above entitled, 43 hours and 45 minutes, and in the second, 45 hours and 25 minutes— and further alleged that this transportation was made without unloading the said live stock for rest, water, and feeding, or either; "and that said defendant knowingly and willfully failed to unload the said live stock in a humane manner, into properly equipped pens for rest, water, and feeding, for a period of at least five consecutive hours; and, further, that the said live stock, above described, were carried in a car in which they could not and did not have proper food, water, space, and opportunity to rest."

The defendant by its answer admitted all the material allegations of the petition, but averred that the shipment mentioned in the petition "was forwarded to Cincinnati on a certain train of the defendant, known and designated as train No. 98; that on said train there were also loaded and forwarded certain other shipments of live stock, to wit," describing 11 other such shipments by various other consignors to consignees at Cincinnati, Ohio, from stations in other states; and that in respect of each of those cases the railroad company had been in like default; and that 11 other suits brought by the United States, each for a penalty based on the same default, were then pending in that court. Upon these facts the defendant claimed that but one offense had been committed, and but one penalty incurred. On filing this answer the defendant moved that the several causes be consolidated, "in order that there may be a recovery of but one penalty for all the shipments." The court being of opinion that the statute dealt with the operation of trains by railroad companies, and not with the different shipments which the trains may carry, the motion was allowed. The district attorney moved for a judgment for a penalty, separately, in each case "for the reason that each of said causes should be treated as a different cause of action, and a separate penalty assessed in each." This motion was overruled; and the plaintiff excepted to this ruling. The court thereupon entered the following judgment:

"The court, being fully advised in the premises, finds that the defendant herein admits its liability in this cause, and therefore doth hereby order and adjudge that said defendant pay to the plaintiff herein the sum of one hundred dollars and its costs herein expended, and in default of payment execu-

tion shall issue, and the court does order, adjudge and decree that the within foregoing order in cause number 1866, shall apply to, operate upon, and be conclusive of the right of the plaintiff to recover of the defendant in each of the following causes, to-wit: 1867, 1868, 1869, 1870, 1871, 1872, 1873, 1874, 1880, and 1884."

The causes were properly consolidated. Section 921 of the Revised Statutes [U. S. Comp. St. 1901, p. 685] provides that "when causes of a like nature or relative to the same question are pending before a court of the United States," this may be done. Whether one judgment may be given for all or a separate judgment in each case will depend upon the special circumstances. If it is necessary to the due administration of the law and the protection of the rights of the parties that the integrity of the several causes shall be so far preserved as to secure the proper result in each case, to the end that the party aggrieved may not be embarrassed thereby in seeking relief against the judgment or for any other sufficient reason, the court will direct the proceedings accordingly. The statute is one for convenience in saving expense to the parties and the time of the court.

The validity of the act of June 29, 1906, is not disputed; nor is the commission of the offense, or offenses, charged in the several petitions. The question presented on these writs of error relates to the penalty, and that depends upon the construction of the first section of the act which reads as follows:

"Be it enacted, etc.. That no railroad, express company, car company, common carrier other than by water, or the receiver, trustee, or lessee of any of them, whose road forms any part of a line of road over which cattle, sheep, swine, or other animals shall be conveyed from one state or territory or the District of Columbia into or through another state or territory or the District of Columbia, or the owners or masters of steam, sailing or other vessels carrying or transporting cattle, sheep, swine, or other animals from one state or territory or the District of Columbia into or through another state or territory or the District of Columbia, shall confine the same in cars, boats, or vessels of any description for a period longer than twenty-eight consecutive hours without unloading the same in a humane manner, into properly equipped pens for rest, water, and feeding, for a period of at least five consecutive hours, unless prevented by storm or by other accidental or unavoidable causes which can not be anticipated or avoided by the exercise of due diligence and foresight: Provided, that upon the written request of the owner or person in custody of that particular shipment, which written request shall be separate and apart from any printed bill of lading, or other railroad form, the time of confinement may be extended to thirty-six hours. In estimating such confinement, the time consumed in loading and unloading shall not be considered, but the time during which the animals have been confined without such rest or food or water on connecting roads shall be included, it being the intent of this act to prohibit their continuous confinement beyond the period of twenty-eight hours, except upon the contingencies hereinbefore stated: Provided, that it shall not be required that sheep be unloaded in the night time, but where the time expires in the night time in case of sheep the same may continue in transit to a suitable place for unloading, subject to the aforesaid limitation of thirty-six hours."

The contention for the plaintiff is that this statute deals with separate shipments or consignments of live stock, and that it does not matter that more than one shipment is taken by a train; and therefore that several offenses may be committed in the transportation of a single train load. The defendant insists that the train load of live stock is the integer which the statute contemplates as the objective thing to

which the forbidden act relates and that therefore the offense is single, though there may be several shipments of stock in a train which may be affected by the same neglect. It may be admitted that the statute is not so clear upon this subject as would be desirable. The language is quite general, and there is but one salient expression upon which we can lay hold with confidence. This is contained in the provision that the 28-hour limitation may be extended to 36 hours "upon the written request of the owner or person in custody of that particular shipment, which written request shall be separate and apart from any printed bill of lading," etc. It seems to us that this gives the key by which the meaning of the act in this respect may be interpreted. It is the owner of the shipment or his representative having the custody of the shipment who is to be referred to as authority for prolonging the transportation without unloading; and it is manifestly implied that there is a bill of lading or other contract which governs the transportation of that shipment. No other person than the one concerned with that shipment is given the power to prolong the transportation without unloading. And one shipper could not exercise his right if he was one of several; or if he could, it would disable other shippers from exercising the right to have their stock unloaded for rest and feeding and then go on. It is urged that it would be very inconvenient for the railroad company to dismember its trains by dropping out one or more cars at different stations and leaving them to be picked up by other trains which may or may not find it convenient to take them in. But the duty imposed by the statute, however construed, is highly inconvenient, and it is a difference in degree merely. Besides, we have little doubt that the company, having in mind the duty it would be under to comply with this requirement, would be able to so adjust its train service as to meet such contingencies without serious derangement. The argument based upon the supposed inconvenience to the railroad company does not impress us as being very persuasive, although if the matter were very doubtful it would deserve to have some weight.

The construction which we propose leads to the harmonious operation of the several provisions of the statute more effectively than any other which has been suggested. And if, as no one doubts, the law is not void for uncertainty and should be given effect, our only duty is to ascertain what it means and execute it accordingly. The maxims and rules adopted for the purpose of interpreting the meaning of a statute require that we attend to all its provisions, and, if possible, attribute to the language in which each is expressed a meaning which will permit other provisions to have their due effect. This doctrine is so well settled that the rules by which it is formulated have become axiomatic. Two of them, "ex antecedentibus et consequentibus fit optima interpretatio" and "noscitur a sociis," are expounded in Broom's Legal Maxims at page 555 and following. A good statement of the doctrine as applied to the case before us is contained in 26 A. & E. Encylc. of L. 616 (2d Ed.), where it is said:

"In construing a section of an act, regard must first be had to the language of the clause itself, and, second, to other clauses in the same act, and that

construction should be adopted which makes the whole act stand consistently together or reduces the inconsistency to the smallest possible limits."

We add some of the cases in the Supreme Court in illustration. Pennington v. Coxe, 2 Cr. 33, 52; Alexander v. Alexandria, 5 Cr. 1, 7. 8; Market Co. v. Hoffman, 101 U. S. 112, 116, 117, 25 L. Ed. 782; Kohlsaat v. Murphy, 96 U. S. 153, 159, 160, 24 L. Ed. 844; Neal v. Clark, 95 U. S. 704, 709, 24 L. Ed. 586.

It is conceded that the statute is penal, and that it is not to be extended beyond the fair meaning of the language employed. But there is scant room for the application of that principle here, for there is no term or language which needs to be strained or extended to similar conditions to reach a proposed conclusion, but simply a question as to the meaning of the language actually employed. The act of June 29, 1906, was enacted to take the place of the act of March 3, 1873, c. 252, 17 Stat. 584, carried into sections 4386 to 4390 of the Revised Statutes [U. S. Comp. St. 1901, pp. 2995, 2997], which it repealed. The earlier law seems not to have been the source of much litigation. It was held by Judge Key at the circuit in United States v. East Tennessee, Virg., etc., R. Co. (C. C.) 13 Fed. 642, upon the limited construction which he gave to that act, that it did not apply to the transportation of live stock from one station to another in the same state. And in United States v. Boston & A. R. Co. (D. C.) 15 Fed. 209, it was held by Judge Nelson, also at the circuit, in a case where a large number of animals had been shipped, that the statute could not be fairly construed as making the unlawful confinement of a single animal a separate offense, and that the confinement of the entire number of animals was a single offense. It does not appear whether in that case there was more than one owner or more than one consignment. And that law did not contain the provision in the new law which allows the prolongation of the confinement of the animals upon the consent of the shipper. In United States v. Louisville & N. R. Co. (D. C.) 18 Fed. 480, Judge Key held that the time during which a preceding carrier had kept the stock confined without unloading must be counted against the second carrier, but that the latter was not liable for the continued confinement by a subsequent carrier for a period which, with the time of the confinement by the carrier sought to be charged, would extend beyond the prescribed 28 hours. In Newport News & M. Val. Co. v. United States, 61 Fed. 488, 9 C. C. A. 579, it was held by this court that the carrier could not excuse itself upon the ground of the occurrence of an "accidental cause," where, as in that case, it was an accident on the road due to its own negligence. In United States v. Harris, 85 Fed. 533, 29 C. C. A. 327, it was held by the Circuit Court of Appeals for the Third Circuit that a receiver in charge of a railroad under an order of a court was not included in the statute as one charged with the duty, and so liable to the penalty, for the reason that only "railroad companies" were mentioned in that act, a matter which is cured by the later act; and the Supreme Court affirmed that ruling in the same case, 177 U. S. 305, 20 Sup. Ct. 609, 44 L. Ed. 780. In the case of United States v. St. Louis & S. F. R. Co. (C. C.) 107 Fed. 870, it was held by Judge Rogers that upon

the facts in that case the unlawful confinement of all the animals on a certain train constituted but a single offense. Those facts were that the train was made up of several cars, each containing part of an entire shipment made by the same party to the same consignee. In that case, the judge came to that conclusion in the absence of the light given by the new law by the provision we have emphasized. However, we think he was right though he reached his conclusion by lights more dim than are now available. We refer to these cases because they are cited. But they really give little or no assistance upon the particular question with which we have to deal.

For the reasons we have given, we conclude that the judgments should be reversed, and further proceedings be had in the court below in accordance with this opinion.

## On Rehearing.

Since our opinion in these cases was filed, upon which we directed a reversal of the judgment, counsel for defendant in error, upon their attention being drawn to certain decisions of the Supreme Court of the United States, to which we shall presently refer, and conceiving that they militate against the right of the United States to remove these cases into this court by writ of error, moves for a rehearing to the end that the question of the jurisdiction of this court may be considered, and, if found not to exist, that the writs of error be dismissed. No doubt, the objection is one which we ought to consider and act upon if presented at any time before we lose control of the cases. The objection is that these are criminal cases, and it is urged that a writ of error will not lie at the instance of the government in a criminal case. The second of these propositions cannot be denied. The law was so settled in United States v. Sanges, 144 U. S. 310, 12 Sup. Ct. 609, 36 L. Ed. 445. But the question remains whether these are criminal cases within the meaning of that rule.

The petition in each case was for the recovery of a penalty, and the actions are in the similitude of the common-law action of debt; the form being simplified by the rules of Code pleading. Section 4 of the act of Congress [U. S. Comp. St. Supp. 1907, p. 919], upon which the actions are based, provides "That the penalty created by the preceding section shall be recovered by civil action in the name of United States in the Circuit or District Court," etc. The contention that these are criminal cases, and that therefore the United States cannot have a writ of error, is said to find support in the decisions of the Supreme Court in Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, and Lees v. United States, 150 U. S. 476, 14 Sup. Ct. 163, 37 L. Ed. 1150. In both of these cases the court was considering the immunities secured to defendants by the constitutional provisions of the fourth and fifth amendments in the Boyd Case, and the sixth amendment in the Lees Case. It was said that such actions were "criminal in their nature." And it was because of that similitude that, having regard to the principle and purpose of the constitutional provisions, the court held they should be applied. In the present case no such considerations apply. No right secured by the Constitution is

affected. In cases not so affected the question would be whether the statute intends that the penalty shall be recovered only by conviction upon an indictment, or may be recovered by a civil action. This distinction and the consequences are considered with attention by Mr. Justice Strong in United States v. Claflin, 97 U. S. 546, 24 L. Ed. 1082, 1085. The subject under discussion was directly involved in the case of United States v. Zucker, 161 U. S. 475, 16 Sup. Ct. 641, 40 L. Ed. 777. That was a civil action brought by the United States to recover the value of certain merchandise which it was claimed had been forfeited in consequence of the violation of the customs act. Upon the trial the government offered in evidence a deposition taken in France. The defendant objected that he was entitled to be confronted by the witness because the action involved the commission of a criminal offense. The court below sustained the objection. But the Supreme Court upon a writ of error, sued out by the United States, held that this was error, and reversed the judgment. Mr. Justice Harlan, in delivering the opinion of the court, canvassed the Boyd and the Lees Cases, and pointed out their inapplicability. It would seem that the Zucker Case presented even better ground for the objection made by the defendant in that case than the ground for the objection here. Moreover, it is significant that in the Zucker Case the writ of error was sued out by the United States, and the cause was entertained and decided on its merits. It seems hardly possible to think that if the court had regarded such an action as a criminal proceeding, it would have done otherwise than to have simply dismissed the writ of error on its own motion. So, too, in the Claflin Case, supra, the writ of error was sued out by the United States, and the cause was considered on its merits. The action of debt has long been used, and regarded as the appropriate remedy for the collection of penalties prescribed for the violation of statutes. Atcheson v. Everett, Cowper, 383; Stockwell v. United States, 13 Wall. 531, 20 L. Ed. 491; Lebanon v. Olcott, 1 N. H. 339; Garman v. Gamble, 10 Watts (Pa.) 382; Ordway v. Central Nat. Bank, 47 Md. 217, 28 Am. Rep. 455; Webster v. People, 14 Ill. 365.

One further observation: The rule that the government may not have a writ of error is a rule of the common law, and not the subject of a constitutional guaranty. It is therefore subject to modification by the Legislature. Congress has provided in the present case that the remedy shall be by a civil action, and the fair import of its meaning would seem to be an action having the ordinary incidents of a civil action, among which is the right to have the judgment reviewed. "It is to be proceeded in, so far as the action is concerned, just as in any other action of debt," said Thompson, J., in Bartolett v. Achey, 38 Pa. 273.

Petition denied.