# MUNCIE ELECTRIC LIGHT COMPANY *v.* JOLIFF.

### [No. 8,953. Filed June 23, 1915.]

1. APPEAL.—*Assignment of Errors.—Waiver.*—Error assigned, but not presented by appellant's brief, is waived. p. 353.
2. APPEAL.— *Questions Reviewable.— Ruling on Demurrer to Answer.*—No question can be presented on the overruling of a demurrer to a paragraph of answer in the absence of a memorandum of defects accompanying the demurrer. p. 353.
3. APPEAL.— *Review.— Findings.— Evidence.— Determining Sufficiency.*—In determining whether the findings of the trial court are supported by the evidence, the court on appeal will look only to that evidence most favorable to appellee, and if it supports such findings, or warrants an inference of the existence of the facts found, the findings are conclusive. p. 354.
4. APPEAL.—*Review.—Findings.—Evidence.—Sufficiency.*—In a suit to enjoin a landowner from interfering with the construction of electric transmission wires on a railroad right of way across his land, where plaintiff alleged in its original complaint, which was verified, that the railroad company from whom it obtained leave to erect its line of wires owned a "right of way" over defendant's land, and the second paragraph of complaint contained a similar averment, such averments together with a deed introduced in evidence showing a conveyance of the land by the original owner, in which it was recited that the right of way "heretofore acquired by agreement of the grantor" was not included in the warranty, as well as other deeds tracing defendant's title back to such original owner, constituted sufficient evidence to warrant a finding that defendant was the owner in fee simple of the land embraced in the right of way subject only to the right of way or easement for railroad purposes. p. 355.
5. RAILROADS.—*Right of Way.—Effect of Grant.—Ownership of Fee.*—The grant of a railroad right of way is the grant of an easement and implies that the fee remains in the grantor. p. 355.
6. ESTOPPEL.—*By Deed.—Title of Remote Grantor.*—Neither party to an action involving a question of title can question the title of the common grantor to whom they trace their source of title. p. 355.

7. INJUNCTION.—*Burden of Proof.*—*Findings.*—*Review.*—In a suit to enjoin a landowner from interfering with the construction of plaintiff's line of electric transmission wires on a railroad right of way over defendant's land, plaintiff was required to come into court with clean hands in order to obtain the relief sought, and had the burden of proving its authority to erect its line of wires on such right of way by showing that such authority came from one having the right to give or confer it, and, in the absence of affirmative proof of such authority, the court was warranted either in finding against plaintiff as to such fact or in permitting the finding to be silent with reference thereto; hence, in such an action a finding against plaintiff on such question of authority can not be disturbed even if there is no affirmative evidence to support it. pp. 356, 363.

8. INJUNCTION.—*Issues.*—*Burden of Proof.*—In a suit to enjoin a landowner from interfering with the construction of plaintiff's line of electric transmission wires on a railroad right of way over defendant's line, the burden of proving plaintiff's right to construct its line over the land in question was continuously on plaintiff, so that a finding that plaintiff obtained permission from the railroad company did not shift to defendant the burden of proving that the railroad company had no authority to grant such permission. p. 357.

9. APPEAL.—*Review.*—*Findings.*—In a suit to enjoin a landowner from interfering with the construction of plaintiff's line of electric transmission wires on a railroad right of way over defendant's land, where the railroad company was not the owner of the fee, it was without authority to grant plaintiff the right to construct its line on such right of way, so that a finding that as to such fee and the owner thereof the plaintiff stood in the relation of a trespasser was correct, though not essential to justify the conclusions stated against plaintiff. p. 357.

10. INJUNCTION.— *Evidence.*— *Estoppel.*— In a suit to enjoin defendant from interfering with the maintenance of plaintiff's line of electric wires over defendant's land, evidence that defendant made objection to plaintiff's employes who were actually engaged in the work of constructing the line along with those who were in immediate charge of the work was sufficient to prevent defendant from being estopped on the ground of standing by and seeing the work progress. p. 358.

11. APPEAL.—*Presenting Questions for Review.*—*Findings and Conclusions of Law.*—A special finding of facts and conclusions of law can be brought in review only by exceptions to the conclusions of law, but where appellant properly excepted to the conclusions and has properly presented the same by its assignment of errors, and has also attempted on its motion for new trial to raise the

question that the decision of the trial court is contrary to law, stating in connection therewith that this ground for new trial raises the same question as the assignment of errors challenging the conclusions of law, the court will regard what appellant says under such ground for new trial as being also intended to challenge the correctness of the conclusions of law. p. 358.

12. ELECTRICITY.— *Transmission Lines.— Right to Construct on Railroad Right of Way.— Statutes.—"Roads".—"Highways".— "Railroad".—*Section 38 of the act of 1905, as amended in 1911 (Acts 1911 p. 421, §7686 Burns 1914), authorizing telephone companies and companies organized for generating and distributing electricity to construct their lines upon any of the public roads and highways of the State, does not authorize an electric company to construct its lines on the right of way of a railroad company without the permission of the owner of the fee, since, though the terms "roads" and "highways" are generic and are ordinarily understood to mean all kinds of public ways, including railroads, the terms are used in the statute in a restrictive sense and were intended to mean only such highways as are used by the public for ordinary travel, and which are under the control of the board of county commissioners, and a railroad is not a public highway in the sense that a country road for wagons and vehicles, or a street of like character in a town or city, is recognized. pp. 359, 361, 362.

13. STATUTES.—*Construction.—Reënactment.*—Where a statute has been construed by the Supreme Court the subsequent reënactment thereof will be deemed to have included the legislative adoption of such construction, unless a clear intent to the contrary is manifest by the statute as reënacted. p. 360.

14. STATUTES.—*Construction.—Legislative Intent.*—In interpreting a statute and giving meaning to any particular words, phrases or sentences therein, due regard must be had to the entire context, and that meaning should be adopted which best harmonizes with all parts of the statute; and the intent of the legislature should also be of controlling influence where the words of the act are such as to permit the carrying out of such intent. p. 362.

From Delaware Superior Court; *James J. Moran,* Special Judge.

Action by the Muncie Electric Light Company against Joseph C. Joliff. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*William F. White* and *William T. Haymond,* for appellant.
*Wilbur Ryman* and *Leffner, Bell & Needham,* for appellee.

HOTTEL, J.—The nature and history of the occurrences which led up to the litigation in which this appeal was taken, and the character of the pleadings tendering the issues on which the case was tried below, briefly stated, are as follows: The appellant is a public service corporation engaged in the business of generating, transmitting and selling electric energy for light, heat and power purposes. It has its principal office and place of business at Muncie, Indiana, and it there generates electricity used by it and its customers. It also has substations for the generation and distribution of such current at the towns of Eaton, Red Key, Dunkirk and Hartford City, Indiana. In the month of September, 1911, and prior thereto appellant was engaged in constructing a transmission line on a private way from its plant in Muncie to its plants in Eaton and Hartford City, and then to Dunkirk and Red Key. This private way over which it was constructing such line was located immediately west of, and adjacent to, the right of way of the Fort Wayne, Cincinnati and Louisville Railroad Company, known as the Lake Erie and Western Railroad. Prior to September, 1911, appellant had procured a private right of way for such line between Muncie and Hartford City from all the owners of the land over which it passed except from appellee, and three others. Having failed in its negotiations with appellee to secure a right of way over his farm, appellant filed condemnation proceedings for that purpose. Pending such proceedings appellant pursuant to permission obtained from said railroad companies constructed its transmission line on their right of way through appellee's land. Later appellant turned its current into such transmission line and proceeded to construct a private telephone line on its poles for the use of its workmen. Appellee objected to such construction and cut the line at a point thereon where his farm crossing passes over the railroad right of way. Appellant then filed its sworn complaint in this cause and procured a temporary restraining order, restraining the appellee from further inter-

fering with such line. Thereafter a motion by appellee to dissolve the restraining order was overruled and a temporary injunction was granted appellant until the final hearing of the case. A second paragraph of complaint was then filed. A demurrer to each paragraph of complaint was overruled, and answer in general denial and an affirmative answer filed. A demurrer to each of the affirmative answers was overruled. A reply in general denial closed the issues. There was a trial by court and a special finding of facts and conclusions of law in appellee's favor. A motion for new trial was overruled and judgment rendered for appellee on the finding.

The errors assigned are, (1) overruling appellant's motion for a new trial; (2) overruling appellant's demurrer to each paragraph of appellee's answer to the first and second paragraphs of complaint; (3-5) the court erred in its conclusions of law, one, two and three, respectively. The second assigned error is not presented by appellant's brief and is therefore waived. We might add that no memorandum accompanies either demurrer and for this reason no question could be presented on such rulings. Acts 1911 p. 415, §344 Burns 1914.

The length of the finding forbids its incorporation in this opinion, except in so far as necessary to an understanding of the questions presented by the appeal, and the disposition made thereof. The substance of the particular findings objected to by appellant is as follows: (1-3) On, before, and after September 4, 1911, Joseph C. Joliff and Lulu B. Joliff, his wife, hereinafter referred to as the ''Joliffs'', were the owners in fee simple of the following described real estate (here follows description), subject only to an easement, or railroad right of way owned by the Fort Wayne, Cincinnati and Louisville Railroad Company, and operated by the Lake Erie and Western Railroad Company. Neither of said companies has or holds any right or interest in said right of way other than a right of way or easement for railroad purposes,

and such right of way is located on and across the real estate of the Joliffs, above described.   (19) At the time appellant entered upon said right of way on the land in question on September 3, it was, and continuously since that time has been, a "trespasser upon the fee simple interest in and to the said lands where said poles were so placed and said wires so strung thereon as held and owned by" the Joliffs.   (24) On Sunday morning, September 1, 1911, the Joliffs knew that appellant entered, or was about to enter, upon that part of their land occupied by the railroad companies for right of way purposes, and before the Joliffs informed appellant that they were the owners of the right of way appellant made several holes and had placed in them poles upon which was intended to be strung the wires for the transmission of electricity.   However, before there was but a very small amount of labor performed and but very little money expended, the Joliffs ordered the servants of appellant who were in charge of the construction work to desist their labor and informed appellant that they were the owners of the fee in the right of way, but such servants of appellant refused to quit such work or to leave the premises.

The conclusions of law are as follows: "First. That the law is with the defendant, and against the plaintiff.   Second. That the plaintiff is not entitled to recover in this case against the defendant, and is not entitled to have an injunction against the defendant, and that the restraining order heretofore issued in said cause should be dissolved. Third.   That the defendant is entitled to recover his costs against the plaintiff in this case."

In support of its contention that the trial court erred in overruling its motion for new trial it is first insisted by appellant that findings 1, 2 and 3 are not supported by the evidence.   It is asserted that there is no evidence, either that the railroad company *did not own* a fee in its right of way over the land in question, or that appellee did own the fee therein.   We can not agree with

this contention. In determining such question this court will look only to that evidence most favorable to appellee, and if it supports such findings, or is such as to have warranted the trial court in inferring the existence of the fact so found by it, this court will be bound by such findings. *Lake Erie, etc., R. Co.* v. *Voliva* (1913), 53 Ind. App. 170, 177, 101 N. E. 338; *Schaffner* v. *Voss* (1910), 46 Ind. App. 551, 557, 93 N. E. 235. We think there was affirmative evidence which justified the findings indicated.

The appellant in its original complaint, which is verified, alleges, in effect, that the railroad company which granted it permission to place its poles and transmission line on the right of way in question owned a *right of way* over said land. The second paragraph of complaint contains a similar averment. "The grant of a right of way is the grant of an easement and implies that the fee remains in the grantor." *Cincinnati, etc., R. Co.* v. *Geisel* (1888), 119 Ind. 77, 21 N. E. 470. See, also, *Chicago, etc., R. Co.* v. *Huncheon* (1892), 130 Ind. 529, 30 N. E. 636; *Quick* v. *Taylor* (1888), 113 Ind. 540, 16 N. E. 588; *Pfaff* v. *Terre Haute, etc., R. Co.* (1886), 108 Ind. 144, 148, 9 N. E. 93; *Williams* v. *Western Union R. Co.* (1880), 50 Wis. 71, 76, 5 N. W. 482; *Brown* v. *Young* (1886), 69 Iowa 625, 29 N. W. 941; *Bosley* v. *Susquehanna Canal Co.* (1830), 3 Bland (Md.) 63, 67; *Uhl* v. *Ohio River R. Co.* (1902), 51 W. Va. 106, 110, 41 S. E. 340, 33 Cyc. 166, 167; 6 Am. and Eng. Ency. Law 530, 531; 7 Words and Phrases 6230

Appellant introduced, in support of the railroad company's title to its right of way, a deed from Samuel Martin to Maxwell M. C. Smell, in which there was the following recital: "Not warranting however herein against the right of way of the Fort Wayne, Muncie and Cincinnati Railway Company heretofore acquired by agreement of the grantor, Samuel Martin, dated March 17, 1869." Through various intermediate deeds appellee traces his title to the same source, and hence

neither appellant nor appellee will be permitted to question the title of the common grantor to whom they trace their source of title. *Pierson* v. *Doe* (1850), 2 Ind. *123, *125; *Wright* v. *Tichenor* (1885), 104 Ind. 185, 187, 3 N. E. 853, and cases cited; *Brandenburg* v. *Seigfried* (1881), 75 Ind. 568, 569; *McWhorter* v. *Heltzell* (1890), 124 Ind. 129, 131, 24 N. E. 743. The deed from Martin introduced by appellant, especially when taken in connection with the other deeds introduced in evidence, and the averments of appellant's complaint and all the other evidence in the case is, we think, sufficient to warrant the court's affirmative finding that appellant was the owner of the easement, or a right of way only, over the land in question and that appellee was the owner of the fee in such right of way. The record shows that Charles Fudge, appellee's immediate grantor was in possession of the land in question at the time he deeded it to appellee and wife. This, in connection with the other evidence indicated, was a sufficient showing as far as appellee's title is concerned. *Peck* v. *Louisville, etc., R. Co.* (1885), 101 Ind. 366, and cases cited.

However, even if there were no affirmative evidence showing that the appellant was not the owner of the fee in such right of way, the finding of such fact is nevertheless 7. justified under the issues tendered. Appellant invoked the equity side of the court and asked injunctive relief against appellee and hence the burden was on it to allege and prove its right and authority to ask such court that it interpose to prevent and enjoin appellee's threatened act. The litigant who comes into a court of equity must come with clean hands. He must show that he is not a trespasser himself before he can hope to have extended to him the aid of such a court to prevent or interfere with the acts of another trespasser. *Ilo Oil Co.* v. *Indiana Nat. Gas, etc., Co.* (1910), 174 Ind. 635, 637, 92 N. E. 1, 30 L. R. A. (N. S.) 1057, and cases cited; *Windfall, etc., Oil Co.* v. *Terwilliger* (1899), 152 Ind. 364, 366, 367, 53 N. E. 284. The

burden being on appellant to prove its authority to place its poles on the right of way in question it devolved on it to show that such authority came from one who had the right to give it or confer it, and in the absence of affirmative proof of such fact, the trial court was justified in doing either of two things, viz., it could do as it did in this case, expressly find against the party having the burden of proving such fact, or it could do what would amount to the same thing; viz., permit its finding to be silent on such fact. *National Surety Co.* v. *State, ex rel.* (1914), 181 Ind. 54, 67, 103 N. E. 105; *Sanderson* v. *Trump Mfg. Co.* (1913), 180 Ind. 197, 224, 102 N. E. 2; *Deemer* v. *Knight* (1914), 55 Ind. App. 397, 398, 103 N. E. 868. Under the issues as here tendered the

8. finding that appellant obtained permission of the railroad company to construct its line along such right of way did not shift to appellee the burden of proving that such railroad company did not have authority to grant such permission. Such burden was from the beginning and continuously on the appellant. *Pittsburgh, etc., R. Co.* v. *Town of Crothersville* (1902), 159 Ind. 330, 332, 334, 64 N. E. 914.

Finding 19 is objected to, but such objections are, in effect, disposed of by our disposition of the objections to the other findings. If the railroad company which granted to

9. appellant its permission to construct its line over such right of way did not itself own the fee and was without authority to grant such permission it follows that as to the fee in such right of way and the owner thereof, appellant stood in the relation of trespasser and hence finding 19 is correct. *Windfall, etc., Oil Co.* v. *Terwilliger, supra.* It is insisted, however, that this finding is purely a conclusion of law and hence can not aid the other findings. Assuming, without so deciding, that this is true, yet, if what we have said before be correct, such finding was not essential and it may be entirely disregarded and there will still remain enough facts found by the court to justify the conclusions of law stated thereon.

Finding 24 is objected to, on the ground that it ''assumes that appellee informed or notified appellant that his wife and he were the owners of the right of way after several holes were dug''. It is insisted that there was no evidence of such fact. It is admitted by appellant that appellee testified in effect that when he saw the laborers at work there on the railroad he learned from them for whom they were working and said to them collectively, ''You people have no business digging those holes there. That right of way belongs to me.'' There was other evidence showing that appellee objected to the erection of such transmission line. An objection made to the appellant's employes who were actually engaged in the work of placing the poles and transmission line on appellee's land along with those who were in immediate charge of the work was sufficient, at least, to prevent appellee from being estopped on account of standing by and seeing the work progress. See *Heck* v. *Greenwood Tel. Co.* (1905), 35 Ind. App. 244, 73 N. E. 960.

The second question attempted to be raised by appellant on its motion for new trial is that the decision of the trial court is contrary to law. Appellee makes some objections to appellant's manner of presenting this question because appellant assumes, and, in fact, states, that ''this ground for a new trial raises the same question in this case'' as its assignment challenging the several conclusions of law. It is true, as appellee contends that, strictly speaking, a special finding of facts and conclusions of law can be brought in review only by exceptions to the conclusions of law. *Royse* v. *Bourne* (1897), 149 Ind. 187, 189, 47 N. E. 827; *Nelson* v. *Cottingham* (1899), 152 Ind. 135, 136, 137, 52 N. E. 702; *Allen* v. *Hollingshead* (1900), 155 Ind. 178, 186, 57 N. E. 917; *Maynard* v. *Waidlich* (1901), 156 Ind. 562, 565, 63 N. E. 48. In this case appellant properly excepted to the conclusions of law and has properly presented such conclusions for review in this court by its assignment of errors. We will therefore treat what it says,

under such ground of its motion for new trial, as being in-tended to challenge also the correctness of such conclusions of law.

It is contended by appellant, in effect, that its right to construct its transmission line along the right of way of the railroad company was given it by statute, and that 12. appellee's only remedy was an action for damages.

This contention is based on §38 of "An act concerning highways", approved March 8, 1905 (Acts 1905 p. 521, §7686 Burns 1908), amended in 1911 (Acts 1911 p. 421, §7686 Burns 1914). Section 38 of the act of 1905, *supra,* provides as follows: "That corporations organized for the purpose of constructing, operating and maintaining telephone lines and telephone exchanges are authorized to set and maintain their poles, posts, piers, abutments, wires and other appliances or fixtures, upon, along, under and across any of the public roads, highways and waters of this state, outside of cities and incorporated towns; and individuals owning telephone lines are hereby given the same authority : *Provided,* That the same shall be erected and maintained in such manner as not to incommode the public in the use of such roads, highways and waters: *Provided, also,* That no pole or appliance shall be so located as to interfere with the ingress or egress from any premises on said road, highway or waters: *Provided, further,* That nothing herein contained shall be construed as depriving the county commissioners of any county of the power to require the relocation of any such pole, poles or appliances which may affect the proper uses of such highway for public travel, for drainage, or for the concurrent use of other telephone lines; that the location and setting of said poles shall be under the supervision of the board of commissioners of the county." This section was amended by the act of 1911, *supra,* so as to extend the same rights to *companies organized for the purposes of generating and distributing electricity for light, heat and power.*

It is insisted that a railroad right of way in Indiana is

one of the State's public highways (citing *City of Aurora* v. *West* [1857], 9 Ind. 74, 85, 86; *Evansville, etc., R. Co.* v. *City of Evansville* [1860], 15 Ind. 395, 411, and *Strange* v. *Board, etc.* [1910], 173 Ind. 640, 652, 91 N. E. 242) ; that in the latter case the Supreme Court before the passage of the act of 1911, *supra,* amending the act of 1905, *supra,* expressly defined the word "highway" as used in the act of 1905, as follows: "Roads and highways are generic terms, embracing all kinds of public ways, such as county and township roads,   *   *   *   turnpikes and gravel roads, tramways, ferries, canals, navigable rivers, including also railroads." It is argued that the legislature of 1911 in its amendment of §38, *supra,* must be presumed to have acted with the Supreme Court's interpretation of the meaning of the words "public roads and highways" in mind, and to have ascribed to such words the meaning that had been given them by the Supreme Court and that inasmuch as the findings show that appellant was engaged in a business included within the amended act of 1911, *supra,* it is protected thereby.   In support of this conclusion appellant relies on the following cases: *Pierce* v. *Drew* (1883), 136 Mass. 75, 49 Am. Rep. 7, 8, 11; *Pensacola Tel. Co.* v. *Western Union Tel. Co.* (1877), 96 U. S. 1, 24 L. Ed. 708; *Attorney General* v. *Metropolitan R. Co.* (1878), 125 Mass. 515, 28 Am. Rep. 264; *Burkam* v. *Ohio, etc., R. Co.* (1890), 122 Ind. 344, 346, 23 N. E. 499; *In re Philadelphia, etc., R. Co.* (1840), 6 Whart. (Pa.) 25, 36 Am. Dec. 202, 209 ; *State, ex rel.* v. *Board, etc.* (1908), 170 Ind. 595, 608, 609, 85 N. E. 513; *Lexington, etc., R. Co.* v. *Applegate* (1839), 8 Dana (Ky.) 289, 33 Am. Dec. 497.   In none of these cases was the question now under consideration before the court.

It is true, as appellee contends, that where the courts have construed a section or a part of a section of a statute and the legislature afterwards reënacts such statute, or

13. the construed portion thereof, the legislature will be deemed to have adopted that meaning and construc-

tion of such statute or reënacted portion thereof placed thereon by the Supreme Court unless the contrary is clearly shown by the language of the reenacted statute, and in so far as such reënacted statute uses the same language used in the former statute it will be presumed to have ascribed to such language the meaning given it by such court, unless a clear intention to the contrary is made manifest by the act itself. *Ross* v. *Hanna* (1910), 173 Ind. 671, 91 N. E. 232; *State* v. *Ensley* (1912), 177 Ind. 483, 489, 490, 97 N. E. 113; Ann. Cas. 1914 D 1306, and cases cited.

The case of *Evansville, etc., R. Co.* v. *City of Evansville, supra,* was a case where the city was sued on a subscription contract for stock in a railroad company executed by the mayor pursuant to an order of the common council of such city. By the charter of the city the common council was authorized "to take stock in any chartered company for making" *roads* "to said city". The case of *City of Aurora* v. *West, supra,* was very similar in its facts. The court in those cases very properly held that the word *"roads"* as used in the charters of such cities included railroads and hence upheld the stock subscription contracts. It is apparent that these cases can have no controlling influence as to the meaning of the word "highways" as used in the section of the statute under consideration. The case of *Strange* v. *Board, etc., supra,* was an action by a taxpayer and freeholder to enjoin the board of commissioners from letting a contract to pave with brick a highway less than three miles in length outside of a city or town pursuant to an election held under the highway act of 1907, being §7719 Burns 1908, Acts 1907 p. 68. The court in that case in speaking of the highway act of 1905, *supra,* defined the word "highway" as above indicated; but an examination of the case will show such definition had no reference to the meaning of the word as used in §38 of such act. Indeed, the definition on its face shows that the court had in mind an inclusive definition rather than

an exclusive definition as evidenced by the words "are generic terms embracing all kinds of public ways". The statute in question by its express provisions shows a restricted use of the word, viz., such *public* highways as are *under the control of the board of commissioners.*

The canons of construction require that in interpreting a statute and in giving meaning to any particular words, phrases or sentences therein due regard must always be had to the entire context, and that meaning should be adopted which best harmonizes with all parts of the statute. *Storms* v. *Stevens* (1885), 104 Ind. 46, 3 N. E. 401; *Seiler* v. *State, ex rel.* (1903), 160 Ind. 605, 613, 65 N. E. 922, 66 N. E. 946, 67 N. E. 448; *Bank* v. *Collector* (1865), 70 U. S. 495; *In re Corby's Estate* (1908), 154 Mich. 353, 117 N. W. 906; *United States* v. *Baltimore, etc., R. Co.* (1908), 159 Fed. 33, 86 C. C. A. 223; *Fisher* v. *McGirr* (1854), 67 Mass. 1, 61 Am. Dec. 381; *Philadelphia* v. *Barber* (1894), 160 Pa. St. 123, 28 Atl. 644; 36 Cyc. 1131, and authorities cited. The intent of the legislature should also be of controlling influence, where the words of the act are such as will permit the carrying out of such intent. *Storms* v. *Stevens, supra; Smith* v. *Andrew* (1912), 50 Ind. App. 602, 605, 98 N. E. 734, and cases cited.

When the act in question is read in its entirety it is manifest that the legislature by the word "highways" as therein used, intended such highways only as are used by the public for ordinary travel, and which are under the control of the board of commissioners of the county; and had no thought or intention of including roads owned by railroad companies or other corporations, such roads being but *quasi* public in character, and not under the general control or supervision of the county commissioners. In this connection we might add that it is questionable whether the legislature, if it had so intended, could have granted to appellant and like companies the power of appropriating in the manner claimed, and without the owners consent, *the fee* in

the right of ways of the railroad companies of the State, except by proper proceedings and upon payment of compensation therefor. *Postal Tel., etc., Co.* v. *Chicago, etc., R. Co.* (1903), 30 Ind. App. 654, 661, 66 N. E. 919; *Kincaid* v. *Indianapolis Nat. Gas Co.* (1890), 124 Ind. 577, 24 N. E. 1060, 19 Am. St. 113, 8 L. R. A. 602; *Terre Haute, etc., R. Co.* v. *Bissell* (1886), 108 Ind. 113, 9 N. E. 144, and cases cited. However, whether the legislature by the act in question could have granted the authority claimed by appellant is not of controlling influence in the instant case; because as before stated it is manifest that such act was never intended to and does not in fact confer such power. A railroad is not, in law, generally recognized as a public highway in the sense that a country road for wagons and vehicles or a street of like character in a town or city is recognized. 33 Cyc. 38; *Comer* v. *State* (1878), 62 Ala. 320; *Hyde* v. *Missouri Pac. R. Co.* (1892), 110 Mo. 272, 19 S. W. 483.

There being no authority under which appellant could appropriate the fee in appellee's land or place thereon the additional burden of its transmission line, constructed

7. without appellee's consent, it must follow that it is in no position to invoke the court's summary interference to prevent appellee's attempts and threatened attempts to rid himself of the burden so wrongfully placed on his land. *Postal Tel. Cable Co.* v. *Eaton* (1897), 170 Ill. 513, 49 N. E. 365, 62 Am. St. 390, 29 L. R. A. 722, 724; *Burl* v. *American Tel., etc., Co.* (1906), 224 Ill. 266, 79 N. E. 705, 8 L. R. A. (N. S.) 1091; *McGee* v. *Overshiner* (1898), 150 Ind. 127, 133, 134, 49 N. E. 951, 65 Am. St. 358, 40 L. R. A. 370; *Kincaid* v. *Indianapolis Nat. Gas Co., supra.*

It might be stated also, in this connection, that it is manifest from finding 22 of the trial court that appellant did not confine its transmission line to the right of way of the railroad company; but, on the contrary, both on the north and south ends of appellee's land, extended its line over on appellee's land some five or six feet, and hence as to that part

of its line it was in no event protected by the authority claimed by it from said railroad company and from the statute in question.

Judgment affirmed. Moran, J., not participating.

NOTE.—Reported in 109 N. E. 433. As to grant of easement by implication, see 122 Am. St. 206. For uses to which railroad right of way may be devoted as against the owner of the fee, see 36 L. R. A. (N. S.) 512. As to the right of a railroad company to permit use of right of way or station grounds by private individuals, see. Ann. Cas. 1912 A 180. As to the right of one of two parties deriving title from common source to assert paramount title as against other party, see 16 Ann. Cas. 652. See, also, under (1) 3 C. J. 1410; 2 Cyc. 1014; (2) 31 Cyc. 316; (3) 3 Cyc. 370; (5) 22 Cyc. 940; (6) 16 Cyc. 716; (7) 22 Cyc. 937; (8) 22 Cyc. 937; 16 Cyc. 926; (9) 33 Cyc. 220; (10) 16 Cyc. 765; (11) 3 C. J. 933-938; 2 Cyc. 730, 728; 38 Cyc. 1990; (12) 15 Cyc. 469, 612; (13) 36 Cyc. 1153; (14) 36 Cyc. 1106.