Michael D. HEFTY, David R. and Sheila R. Herring, Michael D. Friskney, Steven C. Boszor, Virgil Jackson, Mangus Trust (Walter L. Mangus, Trustee), Mary Ann's Trust and Richard's Trust (Forest Warren, Trustee), Carolyn Pickering, Forest Warren, Ron Moore, and All Others Similarly Situated, Appellants,

v.

ALL OTHER MEMBERS OF THE CERTIFIED SETTLEMENT CLASS, Namely, All Initially Noticed Persons Owning Real Property Adjacent to Railroad Rights-of-Way in the State of Indiana which the Penn Central Corporation Formerly Owned or Controlled and Which Were Transferred to U.S. Railroad Vest by Quitclaim in 1992 Except for Those Who Have Submitted Valid Written Requests for Exclusion, and Penn Central Corporation and U.S. Railroad Vest Corporation, Appellees.

No. 61A05–9308–CV–290.[1]

Court of Appeals of Indiana, First District.

Aug. 18, 1994.

Rehearing Denied Nov. 29, 1994.

---

**3.** Repealed by P.L. 2–1992. Now see Ind.Code § 12–26–2–6.

**1.** This case was diverted to this office on June 2, 1994, by direction of the Chief Judge.

Henry J. Price, Paul S. Bailey, Katherine M. Varie, Price & Barker, Indianapolis, Nels Ackerson, Stewart A. Block, Ackerson & Bishop Chartered, Washington, DC, for appellant.

James P. Buchanan, Buchanan & Buchanan, Lebanon, for appellee Class Members.

Robert J. Palmer, May, Oberfell & Lorber, South Bend, Matthew J. Siembieda, Carl M. Buchholz, Blank, Rome, Comisky & McCauley, Philadelphia, PA, for The Penn Central Corp.

Gerald F. Lutkus, Joseph R. Fullenkamp, Barnes & Thornburg, South Bend, for U.S. Railroad Vest, Corp.

BAKER, Judge.

Appellants-plaintiffs Michael D. Hefty, et al. oppose the class action settlement agreed upon by appellee-class representative Warren Buchanan and appellees-defendants Penn Central Corp. and U.S. Railroad Vest Corp. (USRV). The settlement agreement affirmed by the court provides a process to quiet title to the rights-of-way formerly owned or controlled by Penn Central.

## FACTS

On July 31, 1992, Warren Buchanan filed a class action (*Buchanan* action) in Parke County on behalf of Indiana landowners adjacent to the Penn Central railroad line, known as the Crawfordsville Secondary Track. The *Buchanan* action sought to quiet title of the right-of-ways previously granted to Penn Central and later assigned to USRV. The complaint also asserted damages for slander of title. On August 31, 1992, Buchanan petitioned to enlarge the class to include Indiana landowners adjacent to all of the former Penn Central right-of-ways statewide.

Meanwhile, Fern E. Firestone filed a similar class action (*Firestone* action) in Hamilton County on October 19, 1992. Firestone's complaint against Penn Central and USRV asserted claims for fraud, slander of title, theft, criminal conversion, criminal mischief and deception, and racketeer influenced and corrupt organizations (RICO) violations.

On December 15, 1992, Buchanan filed an amended class action complaint, enlarging the class as requested in the previous petition and adding claims of conversion, fraud, and RICO violations. That same day, the Parke Circuit Court entered a preliminary order that certified the *Buchanan* statewide class action and approved a settlement class. On December 30, 1992, the parties submitted a proposed settlement agreement to the Parke Circuit Court. The court set a hearing on the proposed settlement for April 2, 1993. The notices to all class members provided that all requests for exclusion from the settlement class be postmarked no later than March 2, 1993. The notice presented the procedures by which settlement class members could object to the proposed settlement or opt out of the settlement class.

On January 14, 1993, Firestone filed an emergency petition to intervene in the *Buchanan* action to revoke the Parke Circuit Court's certification of a statewide class. The trial court denied the petition to intervene. Firestone returned to the Hamilton County court and obtained statewide class certification of the *Firestone* action on February 23, 1993. On February 24, 1993, Buchanan obtained an order from the Parke Circuit Court vacating the February 23, 1993, order of the Hamilton County court and consolidating the two actions pursuant to Ind. Trial Rule 42(D).[2] The past *Firestone* class representatives then opted out of the *Buchanan* action.

On March 16, 1993, the past *Firestone* representatives filed another motion to intervene as of right to dismiss the amended *Buchanan* complaint under Ind. Trial Rule 12(B)(8). Also on March 16, some of the class members who had not opted out of the settlement class (Objectors) filed a separate motion to intervene, objections to the settlement proposal, a motion to dismiss the amended complaint under T.R. 12(B)(8), a motion for limited discovery, and a motion to disqualify the class representative and class counsel. The Parke Circuit Court rejected the motions of the past *Firestone* class representatives and some of the Objectors' motions.

At the April 2, 1993, hearing on the fairness of the settlement, the court heard objections from certain class members, but refused to allow testimony from nonclass members and class members who had opted out.[3] On April 19, 1993, the trial court entered its final judgment accepting the settlement.

2. On February 26, 1993, Firestone obtained an emergency writ of mandamus and prohibition from the Indiana Supreme Court to stay the Parke Circuit Court proceedings. However, the Supreme Court dissolved the writ on March 9, 1993. The stay on the Parke Circuit Court was lifted on March 15, 1993. To explain the denial of the writ, our Supreme Court issued a written opinion on October 22, 1993, finding that the Parke Circuit Court's consolidation of the *Firestone* action with the *Buchanan* action was proper. *See State ex rel. Firestone v. Parke Cir. Ct.* (1993), Ind., 621 N.E.2d 1113.

3. 550 of approximately 2,300 class members opted out of the class.

## DISCUSSION AND DECISION [4]

### I. Standing

■ Before considering the merits of the case, we must first address Penn Central's argument, adopted by USRV, that the named appellants lack standing to challenge the settlement. Penn Central first maintains that because the appellants are unnamed class members, they cannot appeal the judgment absent a grant of a petition to intervene. The Seventh Circuit has held that if a class member intervenes or objects to the dismissal or compromise of a class action, he has a right to appeal. *Research Corp. v. Asgrow Seed Co.*, 425 F.2d 1059, 1060 (7th Cir.1970). The federal court specifically stated that a person disagreeing with the settlement terms must take these minimal steps to preserve his right to appeal. *Id.* at 1060–61. In *In the Matter of VMS Ltd. Partnership Sec. Lit.*, 976 F.2d 362 (7th Cir.1992), the Seventh Circuit adopted the reasoning of other circuits to the appeal of a post-settlement order. The court dismissed the *VMS* action holding that an unnamed class member has no right to appeal a post-settlement order. However, the *VMS* court recognized that *Research* would have controlled if the case had been an appeal of the approval of the settlement agreement. *Id.* at 368. Hence, we adopt the holding of our federal cousin in *Research* and apply it to the present situation. If the appellants intervened or objected to the settlement, they have standing.

On March 16, 1993, certain class members (Objectors) filed objections to the settlement and a motion to intervene pursuant to Ind. Trial Rule 24(A). Of the named appellants, the Objectors included Michael Hefty, Virgil Jackson, Magnus Trust, Mary Ann's Trust and Richard's Trust, Carolyn Pickering, and Forest Warren. Record at 864–65. However, appellants Ron Moore, David and Sheila Herring, Michael Friskney, and Steven Bos-

zor failed to intervene or object to the settlement. Thus, the appeal is dismissed as to Moore, the Herrings, Friskney, and Boszor.

■ Regarding the Objectors, Penn Central contends that the trial court never granted their motion to intervene and therefore, they lack standing to appeal. We need not consider the parties' dispute about the effect of the motion to intervene because the Objectors did file objections to the settlement. *Research* deems such action sufficient to preserve the Objectors' right to appeal. *See Research*, 425 F.2d at 1060.

■ Next, Penn Central contends that the Objectors' claims are limited to their individual interests, not the class's. We agree. The Objectors argue, without citation to any authority, that the prerequisites of T.R. 23 representation do not apply on appeal. We find the Objectors' suggestion risible. They further contend that if the settlement is determined to be unfair, it must be reversed as to the entire class, citing *In re General Motors Corp. Engine Interchange Lit.*, 594 F.2d 1106, 1122 (7th Cir.1979), *cert. denied*, 444 U.S. 870, 100 S.Ct. 146, 62 L.Ed.2d 95. In *General Motors*, the Seventh Circuit refused to limit the appeal to only those objectors prosecuting the appeal because the objectors were the original named plaintiffs of the class action and the subclass representatives that had informed the other subclass members that their interests would be represented by counsel for the named plaintiffs. *Id.* at 1121. The facts in *General Motors* are distinguishable from those here where the Objectors were not certified class representatives. We conclude that the Objectors represent only their own interests on appeal.

### II. Jurisdiction

■ The Objectors argue the trial court erred in exercising jurisdiction over the statewide class when the *Firestone* action was pending. Our supreme court has al-

---

**4.** Some of the arguments in the Objectors' reply brief are raised there for the first time. Because the reply brief is inappropriate for new arguments, we do not consider them. *See Willig v.* *Dowell* (1993), Ind.App., 625 N.E.2d 476 (arguments first advanced in the reply brief were waived).

ready resolved this issue against the Objectors. *See State ex rel. Firestone,* 621 N.E.2d at 1113–14. The supreme court specifically held that the Parke Circuit Court's consolidation of the *Firestone* action with the *Buchanan* action was proper. *Id.* Under the law of the case doctrine, the trial court had jurisdiction over the statewide class. For the same reason, the trial court did not err in failing to grant the Objectors' T.R. 12(B)(8) motions to dismiss the amended complaint.

### III. Notice

The Objectors also lodge attacks against the 14–page notice of the proposed settlement. They assert that the notice did not comply with T.R. 23 requirements because 1) it was not sufficiently clear that class members must take affirmative action to exclude themselves from the class, and 2) it did not inform class members of the then pending *Firestone* action.

■ The notice stated that the class members have the right to exclude themselves from the class and those who wish to remain in the class need do nothing. The opt out form itself instructed the class members to check only one box—a) to be included in the settlement, or b) to be excluded, and to return the forms. The Objectors suggest that because the notice first states that no action was required to be included in the settlement but then the form directs the class member to mark the box to be included, it gives the impression that a class member desiring to be excluded from the settlement did not have to return the form to opt out. We disagree with the Objectors' suggestion; the converse does not reasonably follow. Whether a class member wishing to be included in the settlement could return the form but did not have to does not create confusion as to a class member wanting to be excluded from the settlement. The notice and the form gave only one procedure for opting out—returning

the form properly marked. The notice also stated that the class member would automatically be included in the settlement unless one elected to opt out of the class. In addition, the form warned that failure to return the form would automatically result in inclusion in the class.

■ The Objectors contend that the notice was too burdensome because it required that the opting out class members' signatures be notarized and copies sent to the Clerk of the court and to counsel. That 550 landowners did opt out of the class belies the Objectors' contentions that the notice was burdensome and confusing.

■■ Also, the notice did not inform class members of the *Firestone* action and stated that if they opted out of the class they would have to pursue their claims individually at their own expense. Adequate notice conveys sufficient information that a reasonable person would consider material in making an informed, intelligent decision of whether to opt out or remain a class member. *In re Nissan Motor Corp. Antitrust Lit.,* 552 F.2d 1088, 1105 (5th Cir.1977). Although the *Firestone* action was still pending, it was not the first-filed class action in the matter. Thus, the Parke Circuit court had exclusive jurisdiction over the *Buchanan* class. It would have been misleading to inform the *Buchanan* class members of the *Firestone* action which then appeared to be a nullity.[5]

■ The Objectors also argue that discovery was insufficient and that the trial court improperly refused their request to conduct additional discovery. The trial court is afforded wide latitude in regulating discovery, and we review its decisions under an abuse of discretion standard. *ConAgra v. Farrington,* 635 N.E.2d 1137 (Ind.App.1994). The Objectors contend that discovery was conducted only as to the Crawfordsville Secondary Tract rights-of-ways, and none was done on the other statewide conveyances. The Objectors' bald assertions do not suggest

5. At the time the notice was sent, it had not been decided that the *Firestone* action would be permitted to continue to represent *Buchanan* class members that opted out.

that any further discovery would have aided or changed the settlement agreement. They present nothing that shows that the trial court abused its discretion in refusing to order additional discovery.

### IV. Fairness of Settlement

 The Objectors raise several arguments alleging the settlement agreement should be set aside. Reviewing a trial court's approval of a settlement agreement, we employ an abuse of discretion standard. *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 681–82 (7th Cir.1987). We will set aside the court's findings only if clearly erroneous. *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 308 (7th Cir.1985). The trial court considers the following factors in determining whether a settlement is fair and reasonable:

1) the strength of plaintiff's case on the merits balanced against the settlement offer;

2) the complexity, length, and expense of litigation;

3) the amount of opposition to the settlement;

4) whether the settlement is a product of collusion;

5) the opinion of competent counsel; and

6) the stage of the proceedings and the amount of discovery completed.

*Id.* The Objectors primarily attack the first, third, and fifth factors; we address each separately.

### A. Strength of Case

 The Objectors attack the first factor by contending that the strength of their case directs proceeding to trial rather than settlement. The strength of the case is the most important factor. *Anderson v. Torrington Co.*, 755 F.Supp. 834, 838 (N.D.Ind.1991). Specifically, the Objectors maintain the settlement is inconsistent with the law regarding railway rights-of-way. They point to

Indiana cases that hold a railroad company's easement over a right-of-way terminated when the railroad company abandoned service over the right-of-way. *See Brown v. Penn Cent. Corp.* (1987), Ind., 510 N.E.2d 641; *Lake County Trust Co. v. Lane* (1985), Ind.App., 478 N.E.2d 684, *trans. denied; Richard S. Brunt Trust v. Plantz* (1983), Ind.App., 458 N.E.2d 251. The Objectors argue that the settlement implicitly presumes that USRV has fee simple interests in all of the rights-of-way and thereby releases Penn Central and USRV from their burden of proving title.

 Contrary to the Objectors' erroneous reading of *Brown*, the railroad does not carry the burden of proof in showing that it has fee simple title. In a quiet title action, the burden of proof is on the claimant. *Ross, Inc. v. Legler* (1964), 245 Ind. 655, 199 N.E.2d 346, 347. The status of a railroad's title to a strip of land depends upon the language in the conveyance. The general rule is that a conveyance of land without additional language as to the use or purpose or in other ways limiting the estate conveyed is to be construed as passing an estate in fee. *Brown*, 510 N.E.2d at 644. On the other hand, reference to a right-of-way in such a conveyance generally conveys an easement. *Id.* Here, the class bears the burden of proving fee simple title.

Reviewing the strength of the class' claims, discovery indicates that of the Crawfordsville Secondary Tract rights-of-way, approximately 17% clearly conveyed fee simple title to Penn Central while the remaining conveyance documents were "cloudy at best" as to the type of conveyance. Record at 1146. At this point, it is unknown how many of the class members acquired fee simple title by Penn Central's abandonment of its easements and would be successful on the merits. Thus, the merits of the class member's claims are not as strong as the Objectors intimate. The known sample, the Crawfordsville Secondary Tract rights-of-ways showing that over 80% of the conveyances do not clarify the fee simple owner, supports a

reasonable inference that the statewide conveyances would not be any clearer. The discovery results illuminate the difficulty of the class' success on the merits of proving title. The settlement gives the Objectors the opportunity to obtain clear title for $520 [6] per parcel by USRV's release of all claims to the property. This figure is half of the estimated costs each Objector could incur to bring a quiet title action separately.

The Objectors complain that the settlement presumes that USRV has valid title to all the rights-of-way. However, the Objectors ignore the legal reality that after expending financial resources, they may discover that it is themselves who do not have title. The settlement is a compromise giving the class members a relatively inexpensive means to quiet title. If a class member chooses to secure title, USRV cannot renege and try to keep the property to sell to a higher bidder. Settlement efficiently and adequately resolves these matters by clearing title at an apportioned cost. *See Mars*, 834 F.2d at 682 (settlement is fair if it gives plaintiffs the expected value of their claim if it went to trial, net of the costs of trial (minus the costs of settlement)). Of course, any landowner that disagreed with the settlement had the opportunity to opt out and pursue an individual remedy.

The Objectors' argument continues that the settlement is unfair because title of any right-of-way that a class member did not seek a quitclaim deed within 6 months of the order vested in USRV. The Objectors mischaracterize this provision as a punitive forfeiture clause. This provision quieted title in favor of USRV if a landowner chose not to declare an interest in the right-of-way. If the class member refused to comply with the settlement but did claim an interest in the right-of-way, his alternative was to opt out of the class. The class member was not required to forfeit any interest in the right-of-way.

The Objectors also complain that class members who elect to obtain fee simple title under the settlement are subject to Penn Central's right to retain mineral rights and lease income from the right-of-ways. The Objectors misread the settlement order as granting Penn Central rights that were not conveyed in the original transactions. Penn Central concedes that the settlement order only reserves its rights that already existed and does not establish any new mineral or easement rights.

## B. Opposition

Next, the Objectors argue that the amount of opposition to the settlement shows that the settlement is not fair and reasonable. We acknowledge that the extent of opposition rarely is a factor entitled to great weight. *Anderson*, 755 F.Supp. at 844. We do not find it particularly alarming that 550 of over 2,300 class members opted out of settlement. Settlements have been approved notwithstanding dissents from large portions of the class. *See Reed v. General Motors Corp.*, 703 F.2d 170 (5th Cir.1983) (more than 600 of 1,469 class members objected); *League of Martin v. Milwaukee*, 588 F.Supp. 1004 (E.D.Wis.1984) (108 objectors in class of 200). The number of opt-outs is comparably significant to the 441 class members that sought to accept the settlement offer before this appeal.

## C. Opinion of Competent Counsel

The last factor the Objectors challenge is the opinion of competent counsel which encompasses adequate representation. *See Anderson*, 755 F.Supp. at 846. The Objectors contend that class counsel, James P. Buchanan, and the former class representative, Warren Buchanan, should have been disqualified because they were related and also were law partners. Certainly such situations require caution. However, the Objec-

---

6. The settlement agreement allows class members to purchase for $770 per acre the rights-of-way that Penn Central formerly owned through warranty deeds; however, where Penn Central did not own the rights-of-way through warranty deeds, USRV must release any claims to the property to adjoining landowners for $520.

tors' allegations are based solely upon their contention that the recovery for the class counsel and class representative is substantially greater than any recovery for the other class members. The settlement agreement requires Penn Central and USRV to compensate class counsel $2,500, plus $30 for each quitclaim transaction USRV makes with a class member. This fee arrangement for class counsel is not peculiar nor suspect of collusion. Although the Objectors speculate that the former class representative might have shared in the fees as a partner in class counsel's law firm had he lived, the representative's death stills such allegations. The former class representative received the same benefit of the settlement as other class members: USRV's quitclaim releasing any interest in the right-of-way adjoining his property in exchange for $520 per parcel.

The Objectors further contend that class counsel severed possible avenues of recovery for the class on damage claims. The Objectors maintain that the settlement is unfair because it ignores the damages claims of 200 landowners that purchased quitclaim deeds from USRV at substantial costs before the class action occurred. The Objectors fail to recognize that those 200 landowners are not part of this class since USRV quitclaimed any interests to those rights-of-way prior to this action, and those landowners may pursue any possible claims independent from this action.

Additionally, the Objectors argue that the settlement relinquishes the fraud and RICO claims in the complaint without any compensation to the class for such release. It appears that the fraud and RICO claims concerned USRV's sale of quitclaim deeds to the above-mentioned 200 landowners prior to the class action. The release of such claims gave notice to the potential class members that if they had such damage claims they should opt out of this class which did not typically have those types of damages. Since the remaining class members should be those who did not actually suffer any damages under those claims, no compensation should be expected in the settlement for their release.

Finally, the Objectors argue that they were inadequately represented because class counsel filed the amended class complaint drafted by Penn Central's counsel. The Objectors neglect to show how this harmed the class and resulted in inadequate representation.

In sum, we find no abuse in the trial court's discretion to approve the settlement agreement.

Judgment Affirmed.

ROBERTSON and HOFFMAN, JJ., concur.