Michael D. HEFTY, Virgil Jackson, Mangus Trust, (Walter L. Mangus, Trustee), Mary Ann's Trust and Richard's Trust (Forest Warren, Trustee), Carolyn Pickering, Forest Warren, Appellants (Class Members and Objectors below),

v.

ALL OTHER MEMBERS OF THE CERTIFIED SETTLEMENT CLASS, Namely, All Initially Noticed Persons Owning Real Property Adjacent to Railroad Rights-of-Way in the State of Indiana which the Penn Central Corporation Formerly Owned or Controlled and Which Were Transferred to U.S. Railroad Vest by Quitclaim in 1992 Except for those Who Have Submitted Valid Written Requests for Exclusion, Appellee (Class Representative below),

Penn Central Corporation and U.S. Railroad Vest Corporation, Appellees (Defendants below).

No. 61S05–9507–CV–799.

Supreme Court of Indiana.

June 2, 1997.

Rehearing Denied Sept. 26, 1997.

---

Nels J. Ackerson, Stewart A. Block, The Ackerson Group, Washington, DC, Henry J. Price, Melissa A. Clark, Price & Barker, Indianapolis, for Appellants.

David C. Ford, Indiana Farm Bureau, Inc., Indianapolis, for Amici Curiae Indiana Farm Bureau, Inc., Indiana Farmers' Union, Indiana Landowners for Justice, Save Property Rights and Taxes, Inc.

James P. Buchanan, Buchanan & Buchanan, Lebanon, for Appellee, All Other Members of the Certified Class.

Robert J. Palmer, May, Oberfell & Lorber, South Bend, Matthew J. Siembieda, Carl M. Buchholz, Blank, Rome, Comisky & McCauley, Philadelphia, PA, for Appellee, Penn Central Corporation.

Gerald F. Lutkus, Joseph R. Fullenkamp, Barnes & Thornburg, South Bend, for Appellee, Railroad Vest Corporation.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

In the context of litigation to determine the ownership of abandoned railroad rights-of-way, we set forth the principles to be used by Indiana trial courts in evaluating proposed settlements in class action cases.

### Background

Warren Buchanan filed a class action in the Parke Circuit Court on July 31, 1992. Buchanan claimed that defendants, Penn Central Corporation and U.S. Railroad Vest Corporation (USRV), had slandered the title of persons owning land adjacent to the abandoned Penn Central railroad line known as the Crawfordsville Secondary Track. Buchanan sought to quiet title to the railroad rights-of-way previously granted to Penn Central and later assigned to USRV. On August 31, 1992, Buchanan filed a petition to enlarge his complaint to include everyone owning land adjacent to abandoned Penn Central rights-of-way in Indiana.

On October 19, 1992, Fern Firestone filed a similar class action in Hamilton County. Firestone alleged claims against USRV for

fraud, slander of title, theft, criminal conversion, criminal mischief and deception and racketeer influenced and corrupt organizations (RICO) violations.

On December 15, 1992, Buchanan filed an amended class action complaint to enlarge the class as previously requested by motion in August and to add claims of conversion, fraud and RICO violations. That same day, the trial court preliminarily approved the class for settlement purposes only and preliminarily approved James Buchanan as class counsel for settlement purposes only. The parties submitted a proposed settlement agreement to the trial court on December 30, 1992. The trial court set a hearing for the proposed settlement for April 2, 1993. The notices sent to all class members provided that all requests for exclusion from the settlement class be postmarked no later than March 2, 1993. The notice informed class members of how they could object to or opt out of the proposed settlement.

On January 14, 1993, Firestone sought to intervene in the Buchanan action to prevent the sending of the settlement notice to the Buchanan class members. On the same day, Firestone sought to intervene in the Buchanan action to revoke the Parke Circuit Court's certification of a statewide class. The trial court denied both motions to intervene. On February 23, 1993, Firestone procured a statewide class certification of the Firestone action in the Hamilton County trial court. Buchanan obtained an order from the Parke County trial court vacating the Hamilton County trial court's order and consolidating the two actions pursuant to Ind.Trial Rule 42(D).[1] The former Firestone class representatives opted out of the Buchanan settlement.

On March 16, 1993, Firestone again petitioned the Parke County court to intervene as of right to dismiss the amended Buchanan complaint under T.R. 12(B)(8). That same day, the plaintiffs ("Objectors") in this action, Buchanan class members who had not opted out of the settlement class, filed a motion to intervene, objections to the settlement proposal, a motion to dismiss the amended complaint under T.R. 12(B)(8), and a motion to disqualify the Buchanan class representative and class counsel. The trial court denied both Firestone's and Objectors' petitions to intervene.

The trial court held a hearing on the fairness of the settlement on April 2, 1993, at which time the court heard testimony from certain class members who objected to the settlement, but refused to allow testimony from nonclass members and class members who had opted out. The trial court issued its order and final judgment accepting the settlement proposal on April 19, 1993.

Objectors appealed. The Court of Appeals affirmed the trial court's judgment. *Hefty v. All Other Members of the Certified Settlement Class,* 638 N.E.2d 1284, 1292 (Ind.Ct. App.1994). The Court of Appeals found that those Objectors who filed objections to the settlement in the trial court had preserved their right to appeal. *Id.* at 1288. However, the appellate court concluded that the fourteen page proposed settlement notice that was sent out to class members was sufficiently clear and not unduly burdensome. *Id.* at 1289–90. The Court of Appeals then reviewed the strength of Objectors' case on the merits balanced against the settlement offer, the amount of opposition to the settlement, and whether class counsel adequately represented Objectors' interests, and determined that the settlement was fair and reasonable. *Id.* at 1290–92.

Objectors petitioned for transfer and this Court granted transfer on July 3, 1995. Objectors assert that the opinion of the Court of Appeals is erroneous for the following reasons: (1) it affirms a trial court settlement that is unfair to class members; (2) it wrongly states that any reversal of the settlement approval would only apply to those objectors who appealed at the time of settlement; (3) it affirms a trial court settlement that fails to comply with the requirements of Ind.Trial Rule 23; and (4) it affirms a trial court settlement that takes Objectors' private land in violation of the U.S. and Indiana Constitutions, Indiana Law and Indiana public policy.

---

1. We reviewed the Parke County order in a writ proceeding and found it to be within the trial court's jurisdiction. *State ex rel. Firestone v. Parke Circuit Court,* 621 N.E.2d 1113 (Ind.1993).

The defendants contend that the Court of Appeals correctly applied the abuse of discretion standard of review in affirming the trial court's approval of this class action settlement. They argue that the class members shoulder the burden of proving they have fee simple title for the rights of way, that title depends upon the language of the original conveyance, and that the language used in the majority of the conveyances at issue is ambiguous as to the property rights conveyed. Thus, defendants argue that this settlement is a compromise that provides a relatively inexpensive means to quiet title.

### Discussion

■ Appellate review of a trial court's rulings on class action issues made under Ind.Trial Rule 23 employs an abuse of discretion standard of review. *American Cyanamid Co. v. Stephen*, 623 N.E.2d 1065, 1070 (Ind.Ct.App.1993); *ConAgra, Inc. v. Farrington*, 635 N.E.2d 1137, 1139 (Ind.Ct.App.1994)(standard of review of a trial court's class certification is abuse of discretion). Trial Rule 23 is based upon Fed. R.Civ.P. 23 and it is appropriate for courts to look at federal court interpretations of the federal rule when applying the Indiana rule. *In re Tina T.*, 579 N.E.2d 48, 55 (Ind.1991). A federal court may find an abuse of discretion where the "district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *In re General Motors Corp. Pick–Up Truck Fuel Tank*, 55 F.3d 768, 783 (3d Cir.1995), *cert. denied sub nom., General Motors Corp. v. French*, — U.S. ——, 116 S.Ct. 88, 133 L.Ed.2d 45. "A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court, based on the entire evidence, concludes with firm conviction that a

mistake has been made." *Id.* (citation omitted).

■ The main issue in this petition to transfer is whether the trial court abused its discretion under T.R. 23(E) by approving the settlement agreement here as fair.[2] Before addressing that particular issue, we discuss the distinctive nature of class actions that requires special and careful judicial scrutiny. Second, we explain the importance of the trial court's duty to certify formally a class under the prerequisites of T.R. 23(A) and (B) when approving a settlement class agreement. Third, we outline a list of factors as a guide to trial courts in structuring their determinations of the fairness of class action settlements. Finally, we apply these fairness factors to the particular facts in the *Hefty* settlement to determine whether the trial court abused its discretion in approving the settlement. In this regard, we will differentiate the standard of review to be applied by a trial court when reviewing a proposed class action settlement from the standard applied by an appellate court when reviewing a trial court's approval of a class action settlement.

### I

Class actions by their nature require increased judicial involvement. *See Manual for Complex Litigation* § 30 at 211 (3d ed.1995)[hereinafter MCL].[3] The potential for prejudice to litigants is great and an overriding consideration prevails in class actions:

[A]bsentees' interests are being resolved and quite possibly bound by the operation of res judicata even though most of the plaintiffs are not the real parties to the suit. The protection of the absentees' due process rights depends in part on the extent the named plaintiffs are adequately interested to monitor the attorneys (who

---

**2.** The judicial policy of Indiana strongly favors settlement agreements. *See Klebes v. Forest Lake Corp.*, 607 N.E.2d 978, 982 (Ind.Ct.App.1993), *trans. denied; Germania v. Thermasol, Ltd.*, 569 N.E.2d 730, 732 (Ind.Ct.App.1991). *Cf. Manns v. State of Indiana Highways*, 541 N.E.2d 929, 932 (Ind.1989) (explaining that judicial policy favors use of partial settlement agreements); *Isby v. Bayh*, 75 F.3d 1191 (7th Cir.1996) ("Federal courts naturally favor the settlement of class action litigation.").

**3.** This Federal Judicial Center publication was undertaken pursuant to the Center's statutory mission "to further the development and adoption of improved judicial administration in the courts of the United States." MCL at xiv. The purpose of the Manual "is to assist in the management of complex litigation." *Id.* at 3.

are, of course, presumed motivated to achieve maximum results by the prospect of substantial fees), and also on the extent that the class representatives have interests that are sufficiently aligned with the absentees to assure that the monitoring serves the interests of the class as a whole. *In re General Motors*, 55 F.3d at 784. As Judge Posner observes, "Class actions differ from ordinary lawsuits in that the lawyers for the class, rather than the clients, have all the initiative and are close to being the real parties in interest. This fundamental departure from the traditional pattern in Anglo–American litigation generates a host of problems." *Mars Steel v. Continental Ill. Nat. Bank & Trust*, 834 F.2d 677, 678 (7th Cir. 1987).

Designed to help combat the potential abuses of class actions, T.R. 23 gives the court broad administrative powers and responsibilities in class actions. And if class actions require heightened judicial scrutiny, so much more so—for the reasons set forth in the following paragraphs—do proposed settlements of class actions.

■ A major risk of settlement, especially where the prospect of settlement appears early in the litigation, is that discovery will be insufficient to permit either side to estimate the worth of the class claims. *See* M.C.L. § 3d § 30.45 at 243. And early settlement with limited discovery leaves the court and the class representative less informed in deciding the strengths and weaknesses of the claims and defenses, the membership of the class, and the benefits to class members through settlement.[4]

Settlement classes also present the risk that absent class members may not learn of the pending action until the putative class counsel, class representative, and the defendant have reached a settlement agreement. "[W]here notice of the class action is . . . sent simultaneously with the notice of the settlement itself, the class members are presented with what looks like a fait accompli." *Mars Steel*, 834 F.2d at 681.

■ Trial Rule 23 addresses these dangers inherent in class action settlements by requiring special judicial oversight. While parties to a normal suit ordinarily do not have to gain a judge's approval to reach a settlement agreement, T.R. 23(E) requires that "a class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." We hold that the mandate of T.R. 23(E) requires courts respond to the danger for abuse in settlements by (i) requiring a showing of fairness before approving these settlements and (ii) certifying more cautiously the classes in settlements than the classes in litigated class actions. *See, e.g., In re General Motors*, 55 F.3d at 805; *Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir.1983); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir.1982); *Simer v. Rios*, 661 F.2d 655, 664–66 (7th Cir.1981).

### A

As to the requirement of a showing of fairness, the trial court may not give rubber stamp approval of a proposed settlement. 2 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 at 11–88 (3d ed.1992). Although the language of the rule itself does not provide specific guidance, the prevailing standard, which we expressly approve, is whether the settlement is fair, reasonable, and adequate. *See, e.g. In re General Motors*, 55 F.3d at 805; *Gautreaux v. Pierce*, 690 F.2d 616, 631 (7th Cir.1982); MCL 3d § 30.42. We discuss the application of this standard to the case before us in *parts III and IV* of this opinion.

### B

■ Under the second of the two T.R. 23(E) requirements—"more cautious certifi-

---

4. These considerations have particular resonance in this case. Buchanan filed a complaint against Penn Central and USRV in July, 1992, and negotiations commenced in November of that same year. The Parke Circuit Court certified the class for "settlement purposes only" on December 15, 1992. That same day, the court certified attorney Buchanan as class counsel for purposes of settlement only. Additionally, just 15 days after certifying the settlement class, the trial court received (and preliminarily approved) the settlement agreement. As discussed in the text, these are the types of facts that should prompt a trial court's heightened inquiry.

cation"—we hold that T.R. 23(E) requires the trial court to exercise closer judicial scrutiny in settlements than where class certification has been litigated. *See* M.C.L. § 3d § 30.42 at 238. In the course of passing on a proposed settlement, the trial court must also certify the case as a class action. In a litigated case, the parties will usually contest long before trial whether the prerequisites to certification contained in T.R. 23(A)[5] and (B)[6] have been met. But, as the Seventh Circuit warns, "the danger of a premature, even a collusive, settlement increase[s] when ... the status of the action as a class action is not determined until a settlement has been negotiated, with all the momentum that a settlement agreement generates...." *Mars Steel,* 834 F.2d at 680.

■ Trial Rule 23 is designed to protect the due process rights of absent class members. *See In re Asbestos Litigation,* 90 F.3d 963, 1008 (5th Cir.1996)(Smith, J., dissenting), *petition for cert. filed,* 65 U.S.L.W. 3631 (U.S. Mar. 3, 1997)(No. 96–1394). The inquiry into whether class members with divergent interests have been properly or improperly included in a single class is an entirely different inquiry than the examination of the fairness of the settlement itself. For this

reason, a finding that a settlement is fair, reasonable, and adequate does not serve as a surrogate for the T.R. 23(A) and (B) findings for certification of the class. *In re General Motors,* 55 F.3d at 794. *See also* 2 Newberg § 11.27 at 11–50. We hold that a trial judge must resolve whether to certify the settlement class under T.R. 23(A) and (B) before determining the fairness of and approving the settlement agreement.[7] We discuss the application of this standard to the case before us in *part II* of this opinion.

## II

■ The trial court in this case made no determination regarding T.R. 23(A) prerequisites of numerosity, commonality, typicality and adequacy of representation. T.R. 23(A)(1)–(4). Nor did it find that any one of the requirements of T.R. 23(B) had been met. These concerns were clearly implicated in this case. For example, the presence of different types of deeds in this case implicates commonality and typicality considerations. T.R. 23(A)(2) & (3). In addition, the close relationship—that of father, son, and law partner—between class representative and class counsel brings into question the adequacy of representation. T.R. 23(A)(4).[8]

5. T.R. 23(A) requires that all of its four prerequisites—usually referred to as numerosity, commonality, typicality, and adequacy of representation—be met in order to maintain a class action.

6. T.R. 23(B) requires that, in addition to all of the four prerequisites of T.R. 23(A) being met, one of its parts must be met in order to maintain a class action.

7. Courts and commentators disagree whether Fed.R.Civ.P. 23 mandates that, when asked to certify a class in order to permit settlement of a prospective class action, the court may consider the settlement in determining whether Rule 23 requirements are satisfied. The extent, if any, to which a trial court can consider the proposed settlement in applying Fed.R.Civ.P. 23 is currently before the United States Supreme Court in *Amchem Products, Inc. v. Windsor,* —— U.S. ——, 117 S.Ct. 379, 136 L.Ed.2d 297 (1996), and the subject of debate in the Advisory Committee on Civil Rules to the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States. While the language of T.R. 23(A) and (B) does not appear to contemplate that the fact of settlement may be considered in applying its requirements, that question is not squarely before us in this case and we defer final decision on it for a more appropriate setting.

For authority supporting the position that the requirements of Rule 23 must be applied without reference to settlement, *see Georgine v. Amchem Products, Inc.,* 83 F.3d 610 (3d Cir.), *cert. granted sub nom. Amchem Products, Inc. v. Windsor,* —— U.S. ——, 117 S.Ct. 379, 136 L.Ed.2d 297 (1996); *In re American Medical Sys., Inc.,* 75 F.3d 1069, 1080 (6th Cir.1996); *Valentino v. Carter–Wallace, Inc.,* 97 F.3d 1227 (9th Cir.1996); *Osher v. SCA Realty I, Inc.,* 945 F.Supp. 298 (D.D.C.1996); *General Motors Corp. v. Bloyed,* 916 S.W.2d 949, 958 (Tex.1996); John C. Coffee, Jr., *Class Wars: The Dilemma of the Mass Tort Class Action,* 95 Colum.L.Rev. 1343 (1995). *But see In re Asbestos Litig.,* 90 F.3d at 975; *In re Dennis Greenman Secur. Litig.,* 829 F.2d 1539, 1543 (11th Cir. 1987); *Officers for Justice v. Civil Service Com. of City and County of San Francisco,* 688 F.2d 615, 633 (9th Cir.1982); *Dunk v. Ford Motor Co.,* 48 Cal.App.4th 1794, 56 Cal.Rptr.2d 483 (1996); 2 Newberg § 11.28.

For a copy of the proposed changes to Fed. R.Civ.P. 23 regarding "settlement classes," *see* 117 S.Ct. CXLVII–CLI (Nov. 1, 1996).

8. Although a court considers the adequacy of the representation during the fairness determination (see *infra* part IV "*Opinion of Competent Counsel*"), that inquiry cannot replace the T.R.

The trial court may not have completely comprehended the nature and extent of the interests at stake in this action without an inquiry into these requirements of T.R. 23(A) and (B).

■ Whether the prerequisites to class *certification* have been met is a question of fact. *American Cyanamid,* 623 N.E.2d at 1072. The trial court occupies a better position to make this determination. *Id.* Therefore, we remand to the trial court to make findings as to whether certification is proper under T.R. 23(A) and (B).

### III

After the trial court properly certifies the class, the issue is whether the settlement is fair, reasonable, and adequate. Courts have interpreted their role in class actions as that of a fiduciary of the class with the responsibility of insuring that the settlement is fair. *See In re Warner Commun. Sec. Litig.,* 798 F.2d 35, 37 (2d Cir.1986); *Plummer v. Chemical Bank,* 668 F.2d 654, 658 (2d Cir.1982); *Armstrong v. Bd. of Sch. Directors,* 616 F.2d 305, 313 (7th Cir.1980); *Mendoza v. United States,* 623 F.2d 1338, 1344 (9th Cir.1980); *City of Detroit v. Grinnell Corp.,* 560 F.2d 1093, 1099 (2d Cir.1977).

■ "Under Rule 23(e) the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members...." *In re General Motors,* 55 F.3d at 785 (citing *Grunin v. International House of Pancakes,* 513 F.2d 114, 123 (8th Cir.1975)). One of the ways the trial judge fulfills this fiduciary responsibility is by determining that "the settlement secures an adequate advantage for the class in return for the surrender of litigation rights against the defendants." 2 Newberg § 11.46 at 11–105 to 11–106. Where the court fails to comply with this duty, upon receiving notice of the proposed settlement agreement, absentee class members are entitled to object. T.R. 23(E). *See* 2 Newberg §§ 11.55 & 11.56.[9]

23(A)(4) examination of whether "the representative parties will fairly and adequately protect the interests of the class." T.R. 23(A)(4).

9. Courts reviewing the claims of objectors should consider that objecting class members' counsel

■ In order to protect the interests of absentee class members, the court "must independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished." Newberg § 11.41 at 11–88 (citing *Air Line Stewards v. American Airlines,* 763 F.2d 875 (7th Cir.1985)). A court's analysis and determination that a settlement is fair will survive appellate review if the trial court shows that "it has explored comprehensively all relevant factors." *Malchman,* 706 F.2d at 434.

■ A trial court's approval of a class action settlement as fair is a two step process: (1) a preliminary evaluation of the fairness of the settlement and (2) a formal fairness hearing where arguments for and against settlement are put forth. MCL 3d § 30.41 at 236–237. A trial court can ask a few basic questions to evaluate preliminarily the fairness of the proposed settlement: Does the settlement provide significantly less relief than what seems appropriate in light of discovery? Does the settlement exclude significant claims pursued in the complaint? Was the settlement agreement reached after little or no discovery? Did the settlement negotiations concerning class compensation and attorneys fees occur at the same time? *In re General Motors,* 55 F.3d at 806.

■ When making a formal determination that a class action settlement agreement is fair, reasonable, and adequate, a federal district court in the Seventh Circuit utilizes the following factors:

(1) the strength of the plaintiff's case on the merits measured against the terms of the settlement;

(2) the complexity, length, and expense of continued litigation;

(3) the degree of opposition to the settlement;

may not necessarily be acting in the best interests of the class any more than is class counsel. *See* Richard B. Schmitt, *Objecting to Class-Action Pacts Can Be Lucrative for Attorneys,* Wall St. J., Jan. 10, 1997, at B1.

(4) the presence of collusion in gaining a settlement;

(5) the opinion of competent counsel as to the reasonableness of the settlement; and

(6) the stage of the proceedings and the amount of discovery completed.

*Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 308 (7th Cir.1985). Although commentators and other circuits employ variations of these factors,[10] we think that this analysis furnishes trial courts with a useful guide in structuring their final opinions on the fairness of the settlement, with one exception. While the "presence of collusion in gaining a settlement" would undoubtedly call into serious question the fairness of the settlement, we do not believe the language of that factor accurately captures the improper conduct of class representatives and counsel that could implicate the fairness of the settlement. To the extent that class representatives or counsel improperly cooperate with the defendant to the detriment of the class, it is not necessarily collusion which is occurring but abdication by the representatives and counsel of their fiduciary duty to the class. Put differently, the term collusion implies misconduct on both sides. But a defendant does not engage in misconduct simply by trying to strike the best settlement possible from the defendant's perspective. On the other hand, the best settlement possible from a defendant's perspective might be very attractive to the representatives and counsel individually while being less than satisfactory from the perspective of the class. Therefore, Indiana trial courts should substitute for the "collusion" factor consideration of the benefit of the settlement to class representatives and their counsel compared to the benefit of the settlement to class members.

## IV

■ Objectors contend that in applying *Donovan's* six factors, the Court of Appeals erroneously concluded that the *Buchanan* settlement satisfied each. As noted at the outset, review of a trial court's rulings on class action issues made under T.R. 23 ordinarily involves an abuse of discretion standard of review on appeal. However, as discussed in the preceding section, a trial court is required to explore comprehensively all relevant factors when approving a class action settlement agreement. Here, the trial court failed to make any findings of fact as to the fairness of this settlement. As such, we are unable to conclude that the trial court did

---

**10.** The Third Circuit has a nine factor test: (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir.1975).

The Second Circuit relies upon the following criteria in ascertaining whether a class action settlement is fair: (1) complexity, expense, and likely duration of litigation; (2) reaction of class to settlement; (3) stage of proceedings and amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining class action through trial; (7) ability of the defendants to withstand greater liability; and (8) range of reasonableness of settlement fund in light of best possible recovery and in light of risks of litigation. *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir.1974).

The *Manual for Complex Litigation* warns that the fairness of a settlement cannot be measured "by reference to a mathematical yardstick." Other factors are relevant in evaluating the fairness of a settlement: (1) the named plaintiffs are the only class members to receive monetary relief, or are to receive relief that is disproportionately large; (2) the settlement amount is much less than that sought in the complaint or indicated by preliminary discovery; (3) major claims or types of relief sought in the complaint have been omitted from the settlement; (4) particular segments of the class are treated significantly differently from others; (5) claimants who are not members of the class are treated significantly differently; (6) many class members object to the settlement; and (7) apparently cogent objections have been raised. MCL § 30.42 at 239 (3d ed.1995).

Newberg suggests general criteria for settlement approval: (1) likelihood of recovery or likelihood of success; (2) amount and nature of discovery or evidence; (3) settlement terms and conditions; (4) recommendation and experience of counsel; (5) future expense and likely duration of litigation; (6) recommendation of neutral parties, if any; (7) number of objectors and nature of objections; and (8) presence of good faith and the absence of collusion. 2 Newberg § 11.43 at 11–97.

not abuse its discretion in approving the settlement agreement without conducting our own analysis of the agreement. We apply our modified version of the six factor test enunciated above.

■ *Strength of Plaintiffs' Case Balanced Against Relief Offered in Settlement.* A principal factor in determining the fairness of a settlement is the strength of the plaintiffs' case on the merits balanced against the settlement offer. *Armstrong v. Board of School Directors,* 616 F.2d at 314. A trial court must rationally assess the merits of the plaintiffs' action in light of the ambiguities of law and fact in order to determine that the settlement is fair, reasonable, and adequate. 2 Newberg § 11.44 at 11–100.

A summary of the relevant provisions of the settlement approved by the trial court on April 19, 1993, is as follows:

1. Settlement class divided into two subclasses: (a) Class I made up of members who own real property adjacent to the rights-of-way formerly owned by Penn Central through warranty deed and (b) Class II made up of members who own real property which is adjacent to rights-of-way Penn Central formerly owned or controlled through "other than warranty deeds," including deeds which reference a right-of-way, are ambiguous as to the character of interest conveyed and are on forms prepared by the railroad, or are otherwise ambiguous as to the character of the interest conveyed.

2. Class I members have the right to buy from USRV the rights-of-way adjacent to their land for $770 per acre.

3. Class II members have the right to pay $520 per parcel in exchange for the quitclaim deed for the rights-of-way adjoining their real property.

4. If during the six months from the effective date of the settlement, Class I members fail to exercise their right to purchase the parcels that Penn Central formerly owned through warranty deed, USRV is deemed to own the rights-of-way in fee simple. If Class II members fail to pay USRV $520 during the six month period, USRV is deemed to own in fee simple the rights-of-way adjacent to those members' land. (R. 1180–81).

While we express no opinion as to the strength of Class I members' case on the merits, our review of relevant case law leads us to conclude that the Court of Appeals erred in deciding that the Class II members were not likely to succeed on the merits.

This court most recently set forth the methodology a court uses to construe the meaning of a deed in general, and of a deed conveying a strip of land to a railroad in particular, in *Brown v. Penn Central Corp.,* 510 N.E.2d 641 (Ind.1987). In *Brown,* owners of a strip of land contiguous to a railroad right-of-way running through Churubusco sought to quiet title to the strip of land. The trial court found that the railroad's right-of-way was extinguished but that the railroad was vested with fee simple title to the strip of land. The Court of Appeals affirmed. On transfer, we framed the issue as whether the strip of land was originally conveyed to the railroad in fee simple or as an easement. After setting forth the language of the deed, we reaffirmed that where there is no ambiguity in the deed, the intention of the parties must be determined from the language of the deed alone. *Brown,* 510 N.E.2d at 641 (citing *Enderle v. Sharman,* 422 N.E.2d 686, 692 (Ind.Ct.App.1981), and *Long v. Horton,* 126 Ind.App. 651, 133 N.E.2d 568 (1956)). But we emphasized that when a railroad prepares a conveyance form, it is responsible for the printed words and so we construe the form in the light most favorable to the grantors. *Id.* (citing *Richard S. Brunt Trust v. Plantz,* 458 N.E.2d 251, 252 (Ind.Ct.App.1983)).

We then set forth the settled law of Indiana on conveyances to railroads of strips, pieces, or parcels of land:

A deed that conveys a *right* generally conveys only an easement. *Brunt Trust,* 458 N.E.2d at 253. The general rule is that a conveyance to a railroad of a strip, piece, or parcel of land, without additional language as to the use or purpose to which the land is to be put or in other ways limiting the estate conveyed, is to be construed as passing an estate in fee, but

reference to a right-of-way in such a conveyance generally leads to its construction as conveying only an easement. *L. & G. Realty & Construction Co. v. Indianapolis,* 127 Ind.App. 315, 322, 139 N.E.2d 580, 585 (1957).

*Brown,* 510 N.E.2d at 644.

The *Brown* case provides a helpful example of how these principles are to be applied. In that case, the granting clause of the deed in question expressly stated the grantors were conveying a right-of-way. Below the pre-printed granting clause was hand-written language which indicated that the strip of land in question was to be "for Depot and Rail Road purposes." We found the deed clearly fell within the general rule set forth above as conveying only an easement in the strip of land in question.

Of significance, we believe, is that we disagreed with the conclusion of the Court of Appeals that the deed was ambiguous. Rather, we found the grantor's intent to convey the strip as an easement to be clearly expressed and not requiring speculation as to the parties' intent.[11]

Of further significance is that, even though we found the deed unambiguous and unnecessary of construction as to intent, we nevertheless set forth certain principles for analyzing the issue of intent. We said:

> If one were to speculate as to what the parties intended back in 1871, several questions arise. If the railroad purchased the strip of land in fee simple, why was this not expressed in the deed? The fact that the railroad used a pre-printed right-of-way form indicates to us that this is what they were bargaining for with the grantor. Surely the railroad, the more experienced party in this transaction, would have included words to indicate the strip of land was to be conveyed in fee

simple if that was the parties' intent. Since the railroad was responsible for the form of the deed, the language used will be construed against it and in favor of the grantor. *Brunt Trust,* 458 N.E.2d at 252.

Further, we are mindful of the public policy in this State in favor of finding easements as opposed to conveyances in fee simple. In *Ross, Inc. v. Legler* ..., this Court reiterated the policy and the reasons supporting the policy. We stated:

> Public policy does not favor the conveyance of strips of land by simple titles to railroad companies for right-of-way purposes, either by deed or condemnation. This policy is based upon the fact that the alienation of such strips or belts of land from and across the primary or parent bodies of the land from which they are severed, is obviously not necessary to the purpose for which such conveyances are made after abandonment of the intended uses as expressed in the conveyance, and that thereafter such severance generally operates adversely to the normal and best use of the property involved. Therefore, where there is ambiguity as to the character of the interest or title conveyed such ambiguity will generally be construed in favor of the original grantors, their heirs or assigns.

245 Ind. [655,] 659, 199 N.E.2d [346,] 347–48 [ (1964) ].

*Brown,* 510 N.E.2d at 644.

■■■■ We spend so much ·time discussing *Brown* because we believe that it well establishes the following three principles of great importance to the case before us:

1.  Conveyance to a railroad of a strip, piece, or parcel of land without additional language as to the use or purpose to which the land is to be put or

---

**11.** Our analysis as to why the language was not ambiguous was as follows:

> The hand-written portion of the deed is a description of the boundaries of the railroad right-of-way. The strip of land in question is described in this part of the deed. We do not agree with the Court of Appeals that the deed is a hybrid, purporting to convey both a right-of-way, and a separate strip of land. Rather, we read the deed as granting a right-of-way

which includes the strip of land. Supporting our construction is the fact that the grant is limited by the hand-written portion which states, "for Depot and Rail Road purposes." The grantor's intent is clearly expressed and contained within the four corners of the deed. We therefore find it unnecessary to speculate as to what the parties might have intended by the words they used in this conveyance.

*Brown,* 510 N.E.2d at 644.

in other ways limiting the estate conveyed, is to be construed as passing an estate in fee; but reference to a right-of-way in such a conveyance generally leads to its construction as conveying only an easement. *Brown*, 510 at 644.[12]

2. While the intent of the parties must be determined from the language of the deed alone when it is not ambiguous, courts will construe deeds prepared by railroads in the light most favorable to the grantors. *Brown*, 510 N.E.2d at 643; *Richard S. Brunt Trust*, 458 N.E.2d at 252.

3. When it is necessary to construe the intent of the parties because of ambiguity as to the character of the interest or title conveyed, (a) where the railroad was responsible for the form of the deed, courts will construe the absence of language conveying the strip of land in fee simple as evidence of the intent of the parties that the strip of land not be conveyed in fee simple; *Richard S. Brunt Trust*, 458 N.E.2d at 252; and (b) to further the public policy of our state, courts will generally construe the ambiguity in favor of the original grantors, their heirs or assigns, *Ross, Inc.*, 245 Ind. at 659, 199 N.E.2d at 347–48.

[20] We think these three principles readily suggest several reasons why Class II members' case on the merits would be strong. The railroads' deeds to property adjacent to Class II members' property include deeds that (i) reference a right-of-way or otherwise limit the estate conveyed; (ii) are ambiguous as to the character of the interest or title conveyed and are on forms for which the railroad was responsible; and (iii) are otherwise ambiguous as to the character of the interest or title conveyed. We think the obvious strength that *Brown* gives to the claims of any such members makes it

impossible for us to agree with the Court of Appeals that at least the Class II members were not likely to succeed on the merits.

■ *Complexity, Length and Expense of Litigation.* Our discussion of this factor is limited to those facts disclosed in the briefs and the Court of Appeals opinion. The Court of Appeals estimates that $520 per parcel is half of the cost for each objector to bring a separate quiet title action. *Hefty*, 638 N.E.2d at 1291. Potentially, only about 2,300 deeds are at issue here. Objectors claim that a trial court would not have to review each individual deed to determine it was an easement or fee simple because there are only 15 different types of Class II deeds (the meaning of some of which may have already been litigated). Objector's Br. at 40–41. This does not seem to be the type of expensive or complex case that adds great weight to this factor.

*Amount of Opposition to the Settlement.* Relying upon the proposition that a small number of objections to a settlement is an indication of its fairness, courts consider the number and vociferousness of the objectors. Although courts have generally assumed that silence by class members implies consent to the agreement, "a combination of observations about the practical realities of class actions has led a number of courts to be considerably more cautious about inferring support from a small number of objectors to a sophisticated settlement." *In re General Motors*, 55 F.3d at 812. *See e.g., In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 217 (5th Cir.1981); *General Motors Interchange Litig.*, 594 F.2d at 1137.

■ The inference of approval because of a lack of objectors may be undeserved especially in a case like this where the class received notice of the class action at the same time as receiving notice of the terms of the settlement. On January 15, 1993, notice of the class action and notice of the settle-

---

12. *See also Smith v. Holloway*, 124 Ind. 329, 24 N.E. 886 (1890); *The Cincinnati, Indianapolis, St. Louis & Chicago Ry. Co. v. Geisel*, 119 Ind. 77, 21 N.E. 470 (1889); *Quick v. Taylor*, 113 Ind. 540, 16 N.E. 588 (1888); *Douglass v. Thomas*, 103 Ind. 187, 2 N.E. 562 (1885); *Ingalls v. Byers*, 94 Ind. 134 (1883); *Huff v. Langman*, 646 N.E.2d 730 (Ind.Ct.App.1995); *Ritz v. Indiana and Ohio R.R., Inc.* 632 N.E.2d 769 (Ind.Ct.App. 1994); *Muncie Electric Light Co. v. Joliff*, 59 Ind.App. 349, 109 N.E. 433 (1915); *Lake Erie & Western Railroad Co. v. Ziebarth*, 6 Ind.App. 228, 33 N.E. 256 (1893)(each case holding parcel conveyed an easement).

ment were mailed to approximately 2,300 members of the settlement class. Five hundred fifty of the approximately 2,300 class members elected to opt out of the settlement. The Court of Appeals correctly pointed out that settlements have been approved notwithstanding dissents from large portions of the class. *Hefty*, 638 N.E.2d at 1291. We conclude that the number of objectors in this case is not particularly helpful in determining whether this settlement is fair.

■ *Benefit of Settlement to Class Representatives and Counsel Compared to Benefit of Settlement to Class Members.* Objectors argue that class counsel inadequately represented the class. Objectors point to the following facts demonstrating inadequate representation of the class's interests: (1) class counsel joined with defendants' counsel to amend the complaint by copying the complaint from the *Firestone* action and (2) under the terms of the agreement, the class representative only paid about $100 per acre for a quit claim deed for the parcel adjacent to his land while most of the class paid about $2,000 per acre to acquire a quit claim deed. In addition, Objectors draw our attention to the "Fees and Expenses" provision of the settlement agreement. Pursuant to this section of the agreement, Penn Central and USRV are to pay into the "Fees and Expenses Fund" the sum of $2,500 and USRV is to pay $30 into the fund for each quitclaim transaction by Class II members. (R. 138). In light of these attorneys fees, Objectors contend that the class representative, as a law partner to class counsel entitled to share in the partnership's profits, shares in a disproportionate amount of the benefit of the settlement. The likelihood of the class representative's potential recovery far exceeding that of absent class members does not support the conclusion that the settlement was fair and reasonable.[13]

■ *Opinion of Competent Counsel.* A trial judge should consider the opinion of competent counsel when determining the

fairness of the settlement. Great weight is given to class counsel's recommendation in favor of the settlement agreement when that recommendation follows arm's length negotiations. *See* M.C.L. § § 30.42 at 240. This factor is based upon the presumption that the attorney negotiated the settlement on the behalf of the entire class.

> The judge should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation, and a presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced capable counsel after meaningful discovery. This standard is a useful guide; if the conditions for the presumption are met and the settlement is a sensible one that seems fair to class members, the settlement should usually be approved.

2 Newberg § 11.47 at 11–114 (citing *Manual for Complex Litigation* § 30.41 (2d ed.1985)). Without specific findings as to adequacy, the conditions for this presumption generally will not be met.

T.R. 23(A)(4) requires as a prerequisite to suing as a representative of a class that "the representative parties will fairly and adequately protect the interests of the class." This prerequisite for certification helps insure that those seeking to be class representative and class counsel will adequately represent the rights and interests of absent class members. Once the judge is confident that the absent class members are sufficiently represented, the opinion of the class counsel can be given more weight in determining that the settlement was fair.

Objectors complain that the class representative and class counsel inadequately represented the class because of a conflict of interest. The facts in this case invoke extreme caution. At the time of the negotiations of the settlement, class counsel, John Buchanan, was the son and law partner of now deceased class representative, Warren

---

**13.** For an example of a settlement in which the benefit to class counsel apparently far exceeds the benefit to the class, *see Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506 (7th Cir.1996) ("A class action in Alabama cost Dexter Kamilewicz $91.33 in attorney fees to recover $2.19 on the merits."), *reh'g denied*, 100 F.3d 1348, *cert. denied*, —— U.S. ——, 117 S.Ct. 1569, 137 L.Ed.2d 714 (1997).

Buchanan. A case in which class counsel is a law partner and son to the class representative raises the question of who is representing the class vis a vis its counsel. We fear the possibility that a class representative so closely associated with class counsel, both personally and professionally, would permit settlement on terms far less favorable to absent class members. On these facts, and particularly in light of the failure of the trial court to make any findings as to the adequacy of the representation, we are unable to afford the opinion of the attorney much weight in deciding the fairness of the settlement.

■ *Stage of Proceedings and the Amount of Discovery Completed.* This factor directs the trial court to consider whether the attorney participating in the settlement negotiations had access to sufficient information to appreciate the merits of the class's case. *In re General Motors,* 55 F.3d at 813. Courts look to the commencement of the class action or some other related action when considering the stage of the proceeding. *In re General Motors,* 55 F.3d at 813; *In re Beef Industry Antitrust Litig.,* 607 F.2d 167, 180 (5th Cir.1979); 2 Newberg § 11.45 at 11–101 to 11–102.

■ On July 31, 1992, Warren Buchanan filed a class action against USRV and Penn Central. In September, 1992, Buchanan, Buchanan's counsel (who is Buchanan's son) and defendants commenced settlement discussions. This occurred prior to the trial court even certifying the class or the class counsel for settlement purposes only. On December 30, 1992, the parties submitted a fourteen page proposed settlement agreement. This was only fifteen days after the trial court certified the class and counsel for settlement only. This case was in litigation for about four months. Actual negotiations started just one month after the plaintiff filed the class action complaint. Counsel for the class was certified just fifteen days prior to entering into a settlement agreement on the behalf of the entire class of adjacent landowners. Prior to that time—the months during which negotiations took place—counsel had been representing plaintiff Buchanan's interest in the action. Settlement at such an early stage in the development of the action makes us dubious of the class counsel's ability to decide appropriately to settle on behalf of the entire class.

■ *Conclusion.* The foregoing analysis is not meant to constitute *de novo* review of the fairness, reasonableness, or adequacy of the settlement agreement; we review a trial court's approval of a class action settlement for abuse of discretion only. However, we do impose upon a trial court a high level of scrutiny when determining the fairness, reasonableness, and adequacy of a class action settlement. Where a trial court fails to make any findings of fact in this regard, an appellate court cannot determine whether the trial court has abused its discretion without undertaking some examination of the settlement. Our examination raises sufficient question about the fairness, reasonableness, and adequacy of this settlement that we are compelled to conclude that the trial court abused its discretion in approving it.

V

Objectors contend that the Court of Appeals wrongly concluded that the Objectors represent only their individual interests in challenging the fairness of the settlement and that any reversal of the settlement approval would only apply to those Objectors who appealed at the time of the settlement and not to the whole class. In reaching the conclusion that the Objectors represent only their own interests on appeal, the appellate court distinguished the facts in *Hefty* from the facts in a Seventh Circuit case in which the objectors were the named plaintiffs of the class. *In re General Motors Corp. Engine Interchange Litig.,* 594 F.2d 1106, 1122 (7th Cir.1979), *cert. denied sub nom. Oswald v. General Motors Corp.,* 444 U.S. 870, 100 S.Ct. 146, 62 L.Ed.2d 95. The appellate court concluded that in *General Motors,* "the Seventh Circuit refused to limit the appeal to only those objectors prosecuting the appeal because the objectors were the original named plaintiffs of the class action and the subclass representatives that had informed the other subclass members that their interests would be represented by counsel for the

named plaintiffs." *Hefty,* 638 N.E.2d 1284, 1288 (Ind.Ct.App.1994).

This issue is inextricably linked to the class certification issues. In *In re General Motors Corp. Engine,* the district court properly certified the class; in the present case, the trial court certified the class and the class representative for settlement purposes only, not pursuant to T.R. 23. When a trial court fails to certify a class pursuant to T.R. 23, we cannot agree that the approval of the settlement is reversed only as to the objectors and not the entire class. Such a conclusion would depend on the idea that the class representative and class counsel adequately represent the claims of the absentees. Adequacy of representation under such circumstances cannot be presumed. Therefore, we conclude that the settlement is reversed not only as to the Objectors but as to the entire class.

### Conclusion

We vacate the opinion of the Court of Appeals. Ind.Appellate Rule 11(b)(3). We reverse the trial court's approval of the settlement agreement and remand to the trial court for further proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON and SELBY, JJ., concur.

BOEHM, J., not participating.